## GRIFFIN ET AL. *v.* ILLINOIS.

No. 95.  Argued December 7, 1955.—Decided April 23, 1956.

*Charles A. Horsky,* acting under appointment by the Court, 349 U. S. 949, argued the cause and filed a brief for petitioners.

*William C. Wines,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief was *Latham Castle,* Attorney General.

Mr. Justice Black announced the judgment of the Court and an opinion in which The Chief Justice, Mr. Justice Douglas, and Mr. Justice Clark join.

Illinois law provides that "Writs of error in all criminal cases are writs of right and shall be issued of course." [1] The question presented here is whether Illinois may, consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment, administer this statute so as to deny adequate appellate review to the poor while granting such review to all others.

The petitioners Griffin and Crenshaw were tried together and convicted of armed robbery in the Criminal Court of Cook County, Illinois. Immediately after their conviction they filed a motion in the trial court asking that a certified copy of the entire record, including a stenographic transcript of the proceedings, be furnished them without cost. They alleged that they were "poor persons with no means of paying the necessary fees to acquire the Transcript and Court Records needed to prosecute an appeal . . . ." These allegations were not denied. Under Illinois law in order to get full direct appellate review of alleged errors by a writ of error it is necessary for the defendant to furnish the appellate court with a bill of exceptions or report of proceedings at the trial certified by the trial judge.[2] As Illinois concedes, it is sometimes

---

[1] Ill. Rev. Stat., 1955, c. 38, § 769.1.

[2] Ill. Rev. Stat., 1953, c. 110, § 259.70A (Supreme Court Rule 70A), now Ill. Rev. Stat., 1955, c. 110, § 101.65 (Supreme Court Rule 65). A writ of error may also be prosecuted on a "mandatory record" kept by the clerk, consisting of the indictment, arraignment, plea, verdict and sentence. The "mandatory record" can be obtained free of charge by an indigent defendant. In such instances review is

impossible to prepare such bills of exceptions [3] or reports without a stenographic transcript of the trial proceedings.[4] Indigent defendants sentenced to death are provided with a free transcript at the expense of the county where convicted.[5] In all other criminal cases defendants needing a transcript, whether indigent or not, must themselves buy it. The petitioners contended in their motion before

---

limited to errors on the face of the mandatory record, and there is no review of trial errors such as an erroneous ruling on the admission of evidence. See *People* v. *Loftus*, 400 Ill. 432, 81 N. E. 2d 495. See also *Cullen* v. *Stevens*, 389 Ill. 35, 58 N. E. 2d 456; A Study of the Illinois Supreme Court, 15 U. of Chi. L. Rev. 107, 125.

[3] "A complete bill of exceptions consists of all proceedings in the case from the time of the convening of the court until the termination of the trial. It includes all of the motions and rulings of the trial court, evidence heard, instructions and other matters which do not come within the clerk's mandatory record." *People ex rel. Iasello* v. *McKinlay*, 409 Ill. 120, 124–125, 98 N. E. 2d 728, 730.

[4] In oral argument counsel for Illinois stated:

"With respect to the so-called bystanders' bill of exceptions or the bill of exceptions prepared from someone's memory in condensed and narrative form and certified to by the trial judge—as to whether that's available in Illinois I can say that everybody out there understands that it is but nobody has heard of its ever being actually used in a criminal case in Illinois in recent years. I think if you went back before the days of court reporting you would find them but none today. And I will say that Illinois has not suggested in the brief that such a narrative transcript would necessarily or even generally be the equivalent of a verbatim transcript of all of the trial.

. . . . .

"There isn't any way that an Illinois convicted person in a noncapital case can obtain a bill of exceptions without paying for it."

See *People* v. *Yetter*, 386 Ill. 594, 54 N. E. 2d 532; *People* v. *Johns*, 388 Ill. 212, 57 N. E. 2d 895; *Jennings* v. *Illinois*, 342 U. S. 104, 109–110, on remand, 411 Ill. 21, 23, 25, 27, 102 N. E. 2d 824, 825–827; *People* v. *Joyce*, 1 Ill. 2d 225, 230, 115 N. E. 2d 262, 264–265; *People* v. *La Frana*, 4 Ill. 2d 261, 266, 122 N. E. 2d 583, 585–586; *People ex rel. Iasello* v. *McKinlay*, 409 Ill. 120, 98 N. E. 2d 728; *People* v. *O'Connell*, 411 Ill. 591, 104 N. E. 2d 825.

[5] Ill. Rev. Stat., 1955, c. 38, § 769a.

the trial court that failure to provide them with the needed transcript would violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The trial court denied the motion without a hearing.

Griffin and Crenshaw then filed a petition under the Illinois Post-Conviction Hearing Act.[6]  Only questions arising under the Illinois or Federal Constitution may be raised in proceedings under this Act.  A companion state act provides that indigent petitioners under the Post-Conviction Act may, under some circumstances, obtain a free transcript.[7]  The effect is that indigents may obtain a free transcript to obtain appellate review of constitutional questions but not of other alleged trial errors such as admissibility and sufficiency of evidence.  In their Post-Conviction proceeding petitioners alleged that there were manifest nonconstitutional errors in the trial which entitled them to have their convictions set aside on appeal and that the only impediment to full appellate review was their lack of funds to buy a transcript.  These allegations have not been denied.  Petitioners repeated their charge that refusal to afford full appellate review solely because of poverty was a denial of due process and equal protection.  This petition like the first was dismissed without hearing any evidence.  The Illinois Supreme Court affirmed the dismissal solely on the ground that the charges raised no substantial state or federal constitutional questions—the only kind of questions which may

---

[6] Ill. Rev. Stat., 1955, c. 38, §§ 826–832.

[7] Ill. Rev. Stat., 1955, c. 37, § 163f.  This section provides in part that "In any case arising under [the Post-Conviction Hearing Act] in which the presiding judge has determined that the post-conviction petition is sufficient to require an answer, it shall be the duty of the official court reporter to transcribe, in whole or in part, his stenographic notes of the evidence introduced at the trial in which the petitioner was convicted, if instructed so to do by the State's Attorney or by the court."

be raised in Post-Conviction proceedings. We granted certiorari. 349 U. S. 937.

Counsel for Illinois concedes that these petitioners needed a transcript in order to get adequate appellate review of their alleged trial errors.[8] There is no contention that petitioners were dilatory in their efforts to get appellate review, or that the Illinois Supreme Court denied review on the ground that the allegations of trial error were insufficient. We must therefore assume for purposes of this decision that errors were committed in the trial which would merit reversal, but that the petitioners could not get appellate review of those errors solely because they were too poor to buy a stenographic transcript. Counsel for Illinois denies that this violates either the Due Process or the Equal Protection Clause, but states that if it does, the Illinois Post-Conviction statute entitles petitioners to a free transcript. The sole question for us to decide, therefore, is whether due process or equal protection has been violated.[9]

Providing equal justice for poor and rich, weak and powerful alike is an age-old problem.[10] People have never ceased to hope and strive to move closer to that goal. This hope, at least in part, brought about in 1215 the royal concessions of Magna Charta: "To no one will we sell, to no one will we refuse, or delay, right or justice. . . . No free man shall be taken or imprisoned, or

---

[8] See note 4, *supra,* and cases there cited.

[9] A dissenting opinion argues that the constitutional question is narrower because petitioners alleged that a transcript was needed rather than required. The State made no such claim and all the briefs and arguments on both sides together with the opinion of the Illinois Supreme Court treated the sole question as being as we have stated it.

[10] "Ye shall do no unrighteousness in judgment: thou shalt not respect the person of the poor, nor honour the person of the mighty: *but* in righteousness shalt thou judge thy neighbor." Leviticus, c. 19, v. 15.

disseised, or outlawed, or exiled, or anywise destroyed; nor shall we go upon him nor send upon him, but by the lawful judgment of his peers or by the law of the land." These pledges were unquestionably steps toward a fairer and more nearly equal application of criminal justice. In this tradition, our own constitutional guaranties of due process and equal protection both call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons. Both equal protection and due process emphasize the central aim of our entire judicial system—all people charged with crime must, so far as the law is concerned, "stand on an equality before the bar of justice in every American court." *Chambers* v. *Florida,* 309 U. S. 227, 241. See also *Yick Wo* v. *Hopkins,* 118 U. S. 356, 369.[11]

Surely no one would contend that either a State or the Federal Government could constitutionally provide that defendants unable to pay court costs in advance should be denied the right to plead not guilty or to defend themselves in court.[12] Such a law would make the constitutional promise of a fair trial a worthless thing. Notice, the right to be heard, and the right to counsel would under such circumstances be meaningless promises to the poor. In criminal trials a State can no more discriminate on account of poverty than on account of religion, race, or color. Plainly the ability to pay costs in advance bears no rational relationship to a defendant's

---

[11] Dissenting opinions here argue that the Illinois law should be upheld since by its terms it applies to rich and poor alike. But a law nondiscriminatory on its face may be grossly discriminatory in its operation. For example, this Court struck down the so-called "grandfather clause" of the Oklahoma Constitution as discriminatory against Negroes although that clause was by its terms nondiscriminatory. *Guinn* v. *United States,* 238 U. S. 347. See also *Lane* v. *Wilson,* 307 U. S. 268.

[12] See discussion in *Hovey* v. *Elliott,* 167 U. S. 409.

guilt or innocence and could not be used as an excuse to deprive a defendant of a fair trial. Indeed, a provision in the Constitution of Illinois of 1818 provided that every person in Illinois "ought to obtain right and justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws." [13]

There is no meaningful distinction between a rule which would deny the poor the right to defend themselves in a trial court and one which effectively denies the poor an adequate appellate review accorded to all who have money enough to pay the costs in advance. It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. See, e. g., McKane v. Durston, 153 U. S. 684, 687–688. But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty. Appellate review has now become an integral part of the Illinois trial system for finally adjudicating the guilt or innocence of a defendant. Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations. See Cole v. Arkansas, 333 U. S. 196, 201; Dowd v. United States ex rel. Cook, 340 U. S. 206, 208; Cochran v. Kansas, 316 U. S. 255, 257; Frank v. Mangum, 237 U. S. 309, 327.

All of the States now provide some method of appeal from criminal convictions, recognizing the importance of appellate review to a correct adjudication of guilt or innocence. Statistics show that a substantial proportion of criminal convictions are reversed by state appellate

---

[13] Ill. Constitution of 1818, Art. VIII, § 12. Substantially the same provision has been carried over into the present Illinois Constitution, Art. II, § 19.

courts.[14]   Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside.   Many States have recognized this and provided aid for convicted defendants who have a right to appeal and need a transcript but are unable to pay for it.[15]   A few have not.   Such a denial is a misfit in a country dedicated to affording equal justice to all and special privileges to none in the administration of its criminal law.[16]   There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.   Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.

The Illinois Supreme Court denied these petitioners relief under the Post-Conviction Act because of its holding that no constitutional rights were violated.   In view of our holding to the contrary the State Supreme Court may decide that petitioners are now entitled to a transcript, as the State's brief suggests.   See Ill. Rev. Stat., 1955, c. 37, § 163f.   Cf. *Dowd* v. *United States ex rel. Cook,* 340

---

[14] See Note, Reversals in Illinois Criminal Cases, 42 Harv. L. Rev. 566.

[15] See, *e. g.,* Ariz. Code Ann., 1939, § 44–2525; Ark. Stat., 1947, § 22–357; Page's Ohio Rev. Code Ann., 1954, § 2301.24; S. C. Code, 1952, § 15–1903; McKinney's N. Y. Laws, Crim. Code, 1945 (Supp. 1955), § 456.   See also Note, 100 A. L. R. 321.

[16] The Criminal Court of Appeals in Oklahoma in 1913 spoke in the tradition of this country's dedication to due process and equal protection when it declared that the law is no respecter of persons and said:

"We want the people of Oklahoma to understand, one and all, that the poorest and most unpopular person in the state . . . can depend upon it that justice is not for sale in Oklahoma, and that no one can be deprived of his right of appeal simply because he is unable to pay a stenographer to extend the notes of the testimony." *Jeffries* v. *State,* 9 Okla. Cr. 573, 576, 132 P. 823, 824.

U. S., at 209–210. We do not hold, however, that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court may find other means of affording adequate and effective appellate review to indigent defendants. For example, it may be that bystanders' bills of exceptions or other methods of reporting trial proceedings could be used in some cases.[17] The Illinois Supreme Court appears to have broad power to promulgate rules of procedure and appellate practice.[18] We are confident that the State will provide corrective rules to meet the problem which this case lays bare.

The judgment of the Supreme Court of Illinois is vacated and the cause is remanded to that court for further action not inconsistent with the foregoing paragraph. Mr. Justice Frankfurter joins in this disposition of the case.

*Vacated and remanded.*

Mr. Justice Frankfurter, concurring in the judgment.

The admonition of de Tocqueville not to confuse the familiar with the necessary has vivid application to appeals in criminal cases. The right to an appeal from a conviction for crime is today so established that this leads to the easy assumption that it is fundamental to the protection of life and liberty and therefore a necessary ingredient of due process of law. "Due process" is, perhaps, the least frozen concept of our law—the least

---

[17] See *Weatherford* v. *Wilson,* 3 Ill. (2 Scam.) 253 (1840); *People ex rel. Maher* v. *Williams,* 91 Ill. 87 (1878); *People ex rel. Hall* v. *Holdom,* 193 Ill. 319, 61 N. E. 1014 (1901); *People* v. *Joyce,* 1 Ill. 2d 225, 230, 115 N. E. 2d 262, 264–265 (1953); *Miller* v. *United States,* 317 U. S. 192 (1942); Note, 15 Ann. Cas. 737.

[18] Ill. Rev. Stat., 1955, c. 110, § 2; Ill. Rev. Stat., 1955, c. 110, § 101.65 (Supreme Court Rule 65); *People* v. *Callopy,* 358 Ill. 11, 192 N. E. 634.

confined to history and the most absorptive of powerful social standards of a progressive society. But neither the unfolding content of "due process" nor the particularized safeguards of the Bill of Rights disregard procedural ways that reflect a national historic policy. It is significant that no appeals from convictions in the federal courts were afforded (with roundabout exceptions negligible for present purposes) for nearly a hundred years; and, despite the civilized standards of criminal justice in modern England, there was no appeal from convictions (again with exceptions not now pertinent) until 1907. Thus, it is now settled that due process of law does not require a State to afford review of criminal judgments.

Nor does the equal protection of the laws deny a State the right to make classifications in law when such classifications are rooted in reason. "The equality at which the 'equal protection' clause aims is not a disembodied equality. The Fourteenth Amendment enjoins 'the equal protection of the laws,' and laws are not abstract propositions." *Tigner* v. *Texas,* 310 U. S. 141, 147. Since capital offenses are *sui generis,* a State may take account of the irrevocability of death by allowing appeals in capital cases and not in others. Again, "the right of appeal may be accorded by the State to the accused upon such terms as in its wisdom may be deemed proper." *McKane* v. *Durston,* 153 U. S. 684, 687–688. The States have exercised this discriminating power. The different States and the same State from time to time have conditioned criminal appeals by fixing the time within which an appeal may be taken, by delimiting the scope of review, by shaping the mechanism by which alleged errors may be brought before the appellate tribunal, and so forth.

But neither the fact that a State may deny the right of appeal altogether nor the right of a State to make an appropriate classification, based on differences in crimes and their punishment, nor the right of a State to lay down

conditions it deems appropriate for criminal appeals, sanctions differentiations by a State that have no relation to a rational policy of criminal appeal or authorizes the imposition of conditions that offend the deepest presuppositions of our society. Surely it would not need argument to conclude that a State could not, within its wide scope of discretion in these matters, allow an appeal for persons convicted of crimes punishable by imprisonment of a year or more, only on payment of a fee of $500. Illinois, of course, has done nothing so crude as that. But Illinois has said, in effect, that the Supreme Court of Illinois can consider alleged errors occurring in a criminal trial only if the basis for determining whether there were errors is brought before it by a bill of exceptions and not otherwise.* From this it follows that Illinois has decreed that only defendants who can afford to pay for the stenographic minutes of a trial may have trial errors reviewed on appeal by the Illinois Supreme Court. (See *People* v. *La Frana*, 4 Ill. 2d 261,

---

* "The record in the trial court may consist only of the mandatory record, *viz.*, indictment, arraignment, plea, trial and judgment. . . . This appears in the clerk's record in every case . . . . The record may include also a bill of exceptions, which consists of all of the motions and rulings of the trial court, evidence heard, instructions, and other matters which do not come directly within the clerk's mandatory record. This may be only a part of the record on review when a bill of exceptions is prayed and allowed, and certified by the court. . . . Therefore, when the review is had upon the common-law record, the sole matter only that may be considered by the court is error appearing upon the face of the record, and matters may not be added by argument, affidavit, or otherwise, to supply or expand the record. The case must stand or fall upon the errors appearing in the record. Of course, where there is a bill of exceptions, which includes motions, evidence, rulings on evidence, instructions, and the like, and such bill of exceptions is made a part of the record, errors may be reached by the remedy of writ of error. . . ." *People* v. *Loftus*, 400 Ill. 432, 433–434, 81 N. E. 2d 495, 497–498.

266, 122 N. E. 2d 583, 585–586.) It has thereby shut off means of appellate review for indigent defendants.

This Court would have to be willfully blind not to know that there have in the past been prejudicial trial errors which called for reversal of convictions of indigent defendants, and that the number of those who have not had the means for paying for the cost of a bill of exceptions is not so negligible as to invoke whatever truth there may be in the maxim *de minimis*.

Law addresses itself to actualities. It does not face actuality to suggest that Illinois affords every convicted person, financially competent or not, the opportunity to take an appeal, and that it is not Illinois that is responsible for disparity in material circumstances. Of course a State need not equalize economic conditions. A man of means may be able to afford the retention of an expensive, able counsel not within reach of a poor man's purse. Those are contingencies of life which are hardly within the power, let alone the duty, of a State to correct or cushion. But when a State deems it wise and just that convictions be susceptible to review by an appellate court, it cannot by force of its exactions draw a line which precludes convicted indigent persons, forsooth erroneously convicted, from securing such a review merely by disabling them from bringing to the notice of an appellate tribunal errors of the trial court which would upset the conviction were practical opportunity for review not foreclosed.

To sanction such a ruthless consequence, inevitably resulting from a money hurdle erected by a State, would justify a latter-day Anatole France to add one more item to his ironic comments on the "majestic equality" of the law. "The law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread." (John Cournos, A Modern Plutarch, p. 27.)

The State is not free to produce such a squalid discrimination. If it has a general policy of allowing criminal appeals, it cannot make lack of means an effective bar to the exercise of this opportunity. The State cannot keep the word of promise to the ear of those illegally convicted and break it to their hope. But in order to avoid or minimize abuse and waste, a State may appropriately hedge about the opportunity to prove a conviction wrong. When a State not only gives leave for appellate correction of trial errors but must pay for the cost of its exercise by the indigent, it may protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent. The growing experience of reforms in appellate procedure and sensible, economic modes for securing review still to be devised, may be drawn upon to the end that the State will neither bolt the door to equal justice nor support a wasteful abuse of the appellate process.

It follows that the petitioners must be accorded an appeal from their conviction, either by having the State furnish them a transcript of the proceedings in the trial court, or by any other means, of which we have not been advised, that may be available under Illinois law, so that the errors of which they complain can effectively be brought for review to the Illinois Supreme Court. It is not for us to tell Illinois what means are open to the indigent and must be chosen. Illinois may prescribe any means that are within the wide area of its constitutional discretion.

The case of these petitioners is that the only adequate means of bringing for review allegedly fatal trial defects resulting in a potentially reversible conviction was a bill of exceptions which their poverty precluded them from securing. The order of the Illinois Supreme Court and the argument of the Attorney General of Illinois in support of that court's judgment apparently assumed that that was the case. Considering the nature of the issue

thus raised by petitioners appearing for themselves, it would savor of disrespect to the Supreme Court of Illinois for us to find an implication in its unqualified rejection of the claims of the petitioners that an effective review other than by bill of exceptions could be had in the present situation. Cf. *Diaz* v. *Gonzalez,* 261 U. S. 102, 105–106. When the case again reaches the Illinois Supreme Court, that court may, of course, find within the existing resources of Illinois law means of according to petitioners effective satisfaction of their constitutional right not to be denied the equal protection of the laws.

We must be mindful of the fact that there are undoubtedly convicts under confinement in Illinois prisons, in numbers unknown to us and under unappealed sentences imposed years ago, who will find justification in this opinion, unless properly qualified, for proceedings both in the state and the federal courts upon claims that they are under illegal detention in that they have been denied a right under the Federal Constitution. It would be an easy answer that a claim that was not duly asserted—as was the timely claim by these petitioners—cannot be asserted now. The answer is too easy. Candor compels acknowledgement that the decision rendered today is a new ruling. Candor compels the further acknowledgement that it would not be unreasonable for all indigent defendants, now incarcerated, who at the time were unable to pay for transcripts of proceedings in trial courts, to urge that they were justified in assuming that such a restriction upon criminal appeals in Illinois was presumably a valid exercise of the State's power at the time when they suffered its consequences. Therefore it could well be claimed that thereby any conscious waiver of a constitutional right is negatived.

The Court ought neither to rely on casuistic arguments in denying constitutional claims, nor deem itself imprisoned within a formal, abstract dilemma. The judicial

choice is not limited to a new ruling necessarily retrospec-
tive, or to rejection of what the requirements of equal pro-
tection of the laws, as now perceived, require. For sound
reasons, law generally speaks prospectively. More than a
hundred years ago, for instance, the Supreme Court of
Ohio, confronted with a problem not unlike the one before
us, found no difficulty in doing so when it concluded that
legislative divorces were unconstitutional. *Bingham* v.
*Miller*, 17 Ohio 445. In arriving at a new principle, the
judicial process is not impotent to define its scope and
limits. Adjudication is not a mechanical exercise nor
does it compel "either/or" determinations.

We should not indulge in the fiction that the law now
announced has always been the law and, therefore, that
those who did not avail themselves of it waived their
rights. It is much more conducive to law's self-respect
to recognize candidly the considerations that give pro-
spective content to a new pronouncement of law. That
this is consonant with the spirit of our law and justified by
those considerations of reason which should dominate the
law, has been luminously expounded by Mr. Justice Car-
dozo, shortly before he came here and in an opinion which
he wrote for the Court. See Address of Chief Judge Car-
dozo, 55 Report of New York State Bar Assn., 263, 294
*et seq.*, and *Great Northern R. Co.* v. *Sunburst Oil &
Refining Co.*, 287 U. S. 358, 363–366. Such a molding
of law, by way of adjudication, is peculiarly applicable to
the problem at hand. The rule of law announced this
day should be delimited as indicated.

Mr. Justice Burton and Mr. Justice Minton,
whom Mr. Justice Reed and Mr. Justice Harlan join,
dissenting.

While we do not disagree with the desirability of the
policy of supplying an indigent defendant with a free
transcript of testimony in a case like this, we do not agree

that the Constitution of the United States compels each State to do so with the consequence that, regardless of the State's legislation and practice to the contrary, this Court must hold invalid state appellate proceedings wherever a required transcript has not been provided without cost to an indigent litigant who has requested that it be so provided. It is one thing for Congress and this Court to prescribe such procedure for the federal courts. It is quite another for this Court to hold that the Constitution of the United States has prescribed it for all state courts.

In the administration of local law the Constitution has been interpreted as permitting the several States generally to follow their own familiar procedure and practice. In so doing this Court has recognized the widely differing but locally approved procedures of the several States. Whether approving of the particular procedures or not, this Court has treated them largely as matters reserved to the States and within the broad range of permissible "due process" in a constitutional sense.

Illinois, as the majority admit, could thus deny an appeal altogether in a criminal case without denying due process of law. *McKane* v. *Durston,* 153 U. S. 684. To allow an appeal at all, but with some difference among convicted persons as to the terms upon which an appeal is exercised, does not deny due process. It may present a question of equal protection. The petitioners urge that point here.

Whether the Illinois statute denies equal protection depends upon whether, first, it is an arbitrary and unreasonable distinction for the legislature to make, between those convicted of a capital offense and those convicted of a lesser offense, as to their right to a free transcript. It seems to us the whole practice of criminal law teaches that there are valid distinctions between the ways in which criminal cases may be looked upon and treated

28

without violating the Constitution. Very often we have cases where the convicted seek only to avoid the death penalty. As all practicing lawyers know, who have defended persons charged with capital offenses, often the only goal possible is to avoid the death penalty. There is something pretty final about a death sentence.

If the actual practice of law recognizes this distinction between capital and noncapital cases, we see no reason why the legislature of a State may not extend the full benefit of appeal to those convicted of capital offenses and deny it to those convicted of lesser offenses. It is the universal experience in the administration of criminal justice that those charged with capital offenses are granted special considerations. Examples of such will readily occur. All States allow a larger number of peremptory challenges of jurors in capital cases than in other cases. Most States permit changes of venue in capital cases on different terms than in other criminal cases. Some States require a verdict of 12 jurors for conviction in a capital case but allow less than 12 jurors to convict in noncapital cases. On the other side of the coin, most States provide no statute of limitations in capital cases. We think the distinction here made by the Illinois statute between capital cases and noncapital cases is a reasonable and valid one.

Secondly, certainly Illinois does not deny equal protection to convicted defendants when the terms of appeal are open to all, although some may not be able to avail themselves of the full appeal because of their poverty. Illinois is not bound to make the defendants economically equal before its bar of justice. For a State to do so may be a desirable social policy, but what may be a good legislative policy for a State is not necessarily required by the Constitution of the United States. Persons charged with crimes stand before the law with varying degrees of economic and social advantage. Some can afford better

lawyers and better investigations of their cases. Some can afford bail, some cannot. Why fix bail at any reasonable sum if a poor man can't make it?

The Constitution requires the equal protection of the law, but it does not require the States to provide equal financial means for all defendants to avail themselves of such laws.

MR. JUSTICE BLACK's opinion is not limited to the future. It holds that a past as well as a future conviction of crime in a state court is invalid where the State has failed to furnish a free transcript to an indigent defendant who has sought, as petitioner did here, to obtain a review of a ruling that was dependent upon the evidence in his case. This is an interference with state power for what may be a desirable result, but which we believe to be within the field of local option.

Whether Illinois would permit appeals adequate to pass upon alleged errors on bills of exception, prepared by counsel and approved by judges, without requiring that full stenographic notes be transcribed is not before us. We assume that it would.

MR. JUSTICE HARLAN, dissenting.

Much as I would prefer to see free transcripts furnished to indigent defendants in all felony cases, I find myself unable to join in the Court's holding that the Fourteenth Amendment requires a State to do so or to furnish indigents with equivalent means of exercising a right to appeal. The importance of the question decided by the Court justifies adding to what MR. JUSTICE BURTON and MR. JUSTICE MINTON have written my further grounds for dissenting and the reasons why I find the majority opinions unsatisfying.

1. *Inadequacy of the Record.*—I would decline to decide the constitutional question tendered by petitioners because the record does not present it in that "clean-cut,"

"concrete," and "unclouded" form usually demanded for a decision of constitutional issues. *Rescue Army* v. *Municipal Court of Los Angeles,* 331 U. S. 549, 584. In my judgment the case should be remanded to the Illinois courts for further proceedings so that we might know the precise nature of petitioners' claim before passing on it.

The record contains nothing more definite than the allegation that "petitioners are poor persons with no means of paying the necessary fees to acquire the Transcript and Court Records needed to prosecute an appeal from their convictions." For my part I cannot tell whether petitioners' claim is that a transcript was "needed" because (a) under Illinois *law* a transcript is a prerequisite to appellate review of trial errors,[1] or (b) as a *factual* matter petitioners could not prepare an adequate bill of exceptions short of having a transcript.

If the claim is that a transcript was *legally* necessary, it is based on an erroneous view of Illinois law. The Illinois cases cited by the petitioners establish only that trial errors cannot be reviewed in the absence of a bill of exceptions, and not that a transcript is essential to the preparation of such a bill.[2] To the contrary, an

---

[1] The Illinois Supreme Court may have interpreted the pleadings in this manner. It described the petitioners' "sole contention" as being that they were "unable to purchase a bill of exceptions and were, therefore, unable to obtain a complete review by this Court." This suggests that the state court construed the claim to be that an appeal was necessarily precluded by the lack of a transcript, not that the petitioners' particular circumstances produced that result. If that is what the Illinois court meant, its construction, having a reasonable basis, would be binding on this Court and would constitute an adequate state ground for the denial of any claim premised on the existence of particular circumstances preventing the petitioners from pursuing other available methods of review.

[2] *E. g., People* v. *Johns,* 388 Ill. 212, 57 N. E. 2d 895; *People* v. *Loftus,* 400 Ill. 432, 81 N. E. 2d 495; *People* v. *O'Connell,* 411 Ill. 591, 104 N. E. 2d 825.

unbroken line of Illinois cases establishes that a bill
of exceptions may consist simply of a narrative account
of the trial proceedings prepared from any available
sources—for example, from the notes or memory of the
trial judge, counsel, the defendant, or bystanders—and
that the trial judge must either certify such a bill as
accurate or point out the corrections to be made.[3]  Viewed
in the light of these cases, the only constitutional question

[3] *Weatherford* v. *Wilson*, 3 Ill. (2 Scam.) 253 (1840) ; *People ex rel.
Maher* v. *Williams*, 91 Ill. 87 (1878) ; *People ex rel. Munson* v. *Gary*,
105 Ill. 264 (1883) ; *People ex rel. Hall* v. *Holdom*, 193 Ill. 319, 61
N. E. 1014 (1901) ; *162 East Ohio Street Hotel Corp.* v. *Lindheimer*,
368 Ill. 294, 13 N. E. 2d 970 (1938) ; *Weber* v. *Sneeringer*, 247 Ill. App.
294 (1928) ; *Merkle* v. *Kegerreis*, 350 Ill. App. 103, 112 N. E. 2d 175
(1953) ; see also *People ex rel. North American Restaurant* v. *Chet-
lain*, 219 Ill. 248, 76 N. E. 364 (1906) ; *Mayville* v. *French*, 246 Ill.
434, 92 N. E. 919 (1910) ; *People ex rel. Simus* v. *Donoghue*, 377 Ill.
122, 35 N. E. 2d 371 (1941).  This line of cases was reaffirmed by
the Illinois Supreme Court in 1953, just three months before the
petitioners were convicted, in *People* v. *Joyce*, 1 Ill. 2d 225, 230, 115
N. E. 2d 262, 264–265, in which the *Williams, Gary, Holdom* and *Lind-
heimer* cases, *supra*, were cited with approval for the proposition
that trial errors may be presented on a writ of error by a "constructed
or 'bystander's' bill of exceptions."  The holding of that case was
that a defendant to whom these alternative methods were not avail-
able "as a practical matter" because of his indigence and incarceration
did not, by failing to seek direct review of his conviction, "waive"
the right given him by the Illinois Post-Conviction Hearing Act to
assert his constitutional claims in a collateral proceeding.  Accord:
*People* v. *La Frana*, 4 Ill. 2d 261, 266, 122 N. E. 2d 583, 585–586.  That
holding does not, of course, detract from the court's affirmation that a
transcript is not legally required for appellate review of trial errors.
It is equally clear that Illinois' recognition of "practicalities" in not
applying a strict doctrine of waiver to the remedial Post-Conviction
Hearing Act does not necessarily mean that the alternative methods
of obtaining review are not sufficiently "available" to satisfy any
supposed constitutional requirements.  That question would depend
upon the facts of the particular case—of which we have not been
informed here—and upon the evaluation of them for constitutional
purposes.

presented by petitioners' bare allegation that they were unable to purchase a transcript would be: Is an indigent defendant, who has not shown that he is unable to obtain full appellate review of his conviction by a narrative bill of exceptions, constitutionally entitled to the added advantage of a free transcript of the trial proceedings for use as a bill of exceptions? I need hardly pause to suggest that such a claim would present no substantial constitutional question.

The Court, however, either takes judicial notice that as a practical matter the alternative methods of preparing a bill of exceptions are inadequate or finds in petitioners' claims an allegation of *fact* that their circumstances were such as to prevent them from utilizing the alternative methods. But even accepting this reading of the pleadings, the constitutional question tendered should not be decided without knowing the circumstances underlying the conclusory allegation of "need." Petitioners' indigence, the only underlying "fact" alleged, did not in itself necessarily preclude them from preparing a narrative bill of exceptions, and we are told nothing as to the other circumstances which prevented them from doing so. The record does not even disclose whether petitioners were incarcerated during the period in which the bill of exceptions had to be filed, or whether they were represented by counsel at the trial. We are left to speculate on the nature of the alleged trial errors and the scope of the bill of exceptions needed to present them. Who can say that if we knew the facts we might not have before us a much narrower constitutional question than the one decided today, or perhaps no such question at all. In these circumstances, I would follow the salutary policy "of avoiding constitutional decisions until the issues are presented with clarity, precision and certainty," *Rescue Army* v. *Municipal Court of Los Angeles, supra,* at p. 576, and would refuse to decide the

constitutional question in the abstract form in which it has been presented here.

According to petitioners' tabulation, no more than 29 States provide free transcripts as of right to indigents convicted of non-capital crimes. Thus the sweeping constitutional pronouncement made by the Court today will touch the laws of at least 19 States[4] and will create a host of problems affecting the status of an unknown multitude of indigent convicts. A decision having such wide impact should not be made upon a record as obscure as this, especially where there are means ready at hand to have clarified the issue sought to be presented.

However, since I stand alone in my view that the Court should refrain from deciding the broad question urged upon us until the necessity for such a decision becomes manifest, I deem it appropriate also to note my disagreement with the Court's decision of that question. Inasmuch as the Court's decision is not—and on this record cannot be—based on any facts peculiar to this case, I consider that question to be: Is an indigent defendant

---

[4] Of these 19 at least 5 have, however, expressly given the trial courts discretionary power to order free transcripts in non-capital cases. Mass. Ann. Laws, c. 278, § 33A, as amended by Acts 1955, c. 352 ("by order of the court"); N. D. Rev. Code, 1943, § 27-0606 (when "there is reasonable cause therefor"); Ore. Rev. Stat., 1953, § 21.470 (if "justice will be thereby promoted"); S. D. Code, 1939, § 34.3903 (if "essential to the protection of the substantial rights of the defendant"); Wash. Rev. Code, 1951, § 2.32.240 (if "justice will thereby be promoted"). The Rhode Island Supreme Court has reached a similar result by interpretation of a statute authorizing reimbursement for expenditures of appointed counsel. *State* v. *Hudson,* 55 R. I. 141, 179 A. 130 (1935) ("sound discretion . . . to be exercised with great circumspection and only for serious cause"). In addition, petitioners' brief refers to a letter from the Chief Justice of the Connecticut Supreme Court of Errors which states that free transcripts may be furnished in the discretion of the court in non-capital cases.

who "needs" a transcript in order to appeal constitutionally entitled, regardless of the nature of the circumstances producing that need, to have the State either furnish a free transcript or take some other action to assure that he does in fact obtain full appellate review?

2. *Equal Protection.*—In finding an answer to that question in the Equal Protection Clause, the Court has painted with a broad brush. It is said that a State cannot discriminate between the "rich" and the "poor" in its system of criminal appeals. That statement of course commands support, but it hardly sheds light on the true character of the problem confronting us here. Illinois has not imposed any arbitrary conditions upon the exercise of the right of appeal nor any requirements unnecessary to the effective working of its appellate system. Trial errors cannot be reviewed without an appropriate record of the proceedings below; if a transcript is used, it is surely not unreasonable to require the appellant to bear its cost; and Illinois has not foreclosed any other feasible means of preparing such a record. Nor is this a case where the State's own action has prevented a defendant from appealing. Cf. *Dowd* v. *United States ex rel. Cook,* 340 U. S. 206; *Cochran* v. *Kansas,* 316 U. S. 255. All that Illinois has done is to fail to alleviate the consequences of differences in economic circumstances that exist wholly apart from any state action.

The Court thus holds that, at least in this area of criminal appeals, the Equal Protection Clause imposes on the States an affirmative duty to lift the handicaps flowing from differences in economic circumstances. That holding produces the anomalous result that a constitutional admonition to the States to treat all persons equally means in this instance that Illinois must give to some what it requires others to pay for. Granting that such a classification would be reasonable, it does not follow that a State's failure to make it can be regarded as discrimina-

tion. It may as accurately be said that the real issue in this case is not whether Illinois *has* discriminated but whether it has a duty *to* discriminate.

I do not understand the Court to dispute either the necessity for a bill of exceptions or the reasonableness of the general requirement that the trial transcript, if used in its preparation, be paid for by the appealing party. The Court finds in the operation of these requirements, however, an invidious classification between the "rich" and the "poor." But no economic burden attendant upon the exercise of a privilege bears equally upon all, and in other circumstances the resulting differentiation is not treated as an invidious classification by the State, even though discrimination against "indigents" by name would be unconstitutional. Thus, while the exclusion of "indigents" from a free state university would deny them equal protection, requiring the payment of tuition fees surely would not, despite the resulting exclusion of those who could not afford to pay the fees. And if imposing a condition of payment is not the equivalent of a classification by the State in one case, I fail to see why it should be so regarded in another. Thus if requiring defendants in felony cases to pay for a transcript constitutes a discriminatory denial to indigents of the right of appeal available to others, why is it not a similar denial in misdemeanor cases or, for that matter, civil cases?

It is no answer to say that equal protection is not an absolute, and that in other than criminal cases the differentiation is "reasonable." The resulting *classification* would be invidious in all cases, and an invidious classification offends equal protection regardless of the seriousness of the consequences. Hence it must be that the differences are "reasonable" in other cases not because the "classification" is reasonable but simply because it is not unreasonable in those cases for the State to fail to relieve indigents of the economic burden. That is, the issue here

is not the typical equal protection question of the reasonableness of a "classification" on the basis of which the State has imposed legal disabilities, but rather the reasonableness of the State's failure to remove natural disabilities. The Court holds that the failure of the State to do so is constitutionally unreasonable in this case although it might not be in others. I submit that the basis for that holding is simply an unarticulated conclusion that it violates "fundamental fairness" for a State which provides for appellate review, and thus apparently considers such review necessary to assure justice, not to see to it that such appeals are in fact available to those it would imprison for serious crimes. That of course is the traditional language of due process, see *Betts* v. *Brady*, 316 U. S. 455, 462, and I see no reason to import new substance into the concept of equal protection to dispose of the case, especially when to do so gives rise to the all-too-easy opportunity to ignore the real issue and solve the problem simply by labeling the Illinois practice as invidious "discrimination."

3. *Due Process.*—Has there been a violation of the Due Process Clause? The majority of the Court concedes that the Fourteenth Amendment does not require the States to provide for any kind of appellate review. Nevertheless, Illinois, in the forefront among the States, established writs of error in criminal cases as early as 1827.[5] In 1887, it provided for official court reporters, thereby relieving defendants of the burden of hiring reporters in order to obtain a transcript.[6] In 1927, it provided that for indigents sentenced to death "all necessary costs and expenses" incident to a writ of error, including the cost of a transcript, would be paid by

---

[5] Ill. Rev. L. 1827, Crim. Code, §§ 186, 187; Ill. Rev. Stat., 1955, c. 38, § 769.1.

[6] Ill. Laws 1887, p. 159; Ill. Rev. Stat., 1955, c. 37, § 163b.

the counties.[7]   And in 1953, free transcripts were authorized for the presentation of constitutional claims.[8]   Thus Illinois has steadily expanded the protection afforded defendants in criminal cases, and in recent years has made substantial strides towards alleviating the natural disadvantages of indigents.   Can it be that, while it was not unconstitutional for Illinois to afford no appeals, its steady progress in increasing the safeguards against erroneous convictions has resulted in a constitutional decline?

Of course the fact that appeals are not constitutionally required does not mean that a State is free of constitutional restraints in establishing the terms upon which appeals will be allowed.   It does mean, however, that there is no "right" to an appeal in the same sense that there is a right to a trial.[9]   Rather the constitutional right under the Due Process Clause is simply the right not to be denied an appeal for arbitrary or capricious reasons.   Nothing of that kind, however, can be found in any of the steps by which Illinois has established its appellate system.

We are all agreed that no objection of substance can be made to the provisions for free transcripts in capital and constitutional cases.   The due process challenge must therefore be directed to the basic step of permitting appeals at all without also providing an *in forma pauperis* procedure.   But whatever else may be said of Illinois' reluctance to expend public funds in perfecting appeals for indigents, it can hardly be said to be arbitrary.   A policy of economy may be unenlightened, but it is cer-

---

[7] Ill. Laws 1927, p. 400, § 1½; Ill. Rev. Stat., 1955, c. 38, § 769a.

[8] Ill. Laws 1953, p. 859; Ill. Rev. Stat., 1955, c. 37, § 163f.

[9] This difference makes of dubious validity any analogy between a condition imposed upon the right to defend oneself and a condition imposed upon the right to appeal.

tainly not capricious. And that it has never generally been so regarded is evidenced by the fact that our attention has been called to no State in which *in forma pauperis* appeals were established contemporaneously with the right of appeal. I can find nothing in the past decisions of this Court justifying a holding that the Fourteenth Amendment confines the States to a choice between allowing no appeals at all or undertaking to bear the cost of appeals for indigents, which is what the Court in effect now holds.

It is argued finally that, even if it cannot be said to be "arbitrary," the failure of Illinois to provide petitioners with the means of exercising the right of appeal that others are able to exercise is simply so "unfair" as to be a denial of due process. I have some question whether the non-arbitrary denial of a right that the State may withhold altogether could ever be so characterized. In any event, however, to so hold it is not enough that we consider free transcripts for indigents to be a desirable policy or that we would weigh the competing social values in favor of such a policy were it our function to distribute Illinois' public funds among alternative uses. Rather the question is whether some method of assuring that an indigent is able to exercise his right of appeal is "implicit in the concept of ordered liberty," *Palko* v. *Connecticut,* 302 U. S. 319, 325, so that the failure of a State so to provide constitutes a "denial of fundamental fairness, shocking to the universal sense of justice," *Betts* v. *Brady, supra,* at 462. Such an equivalence between persons in the means with which to exercise a right of appeal has not, however, traditionally been regarded as an essential of "fundamental fairness," and the reforms extending such aid to indigents have only recently gained widespread acceptance. Indeed, it was not until an Act of Congress in 1944 that defendants in federal criminal

cases became entitled to free transcripts,[10] and to date approximately one-third of the States still have not taken that step. With due regard for the constitutional limitations upon the power of this Court to intervene in State matters, I am unable to bring myself to say that Illinois' failure to furnish free transcripts to indigents in all criminal cases is "shocking to the universal sense of justice."

As I view this case, it contains none of the elements hitherto regarded as essential to justify action by this Court under the Fourteenth Amendment. In truth what we have here is but the failure of Illinois to adopt as promptly as other States a desirable reform in its criminal procedure. Whatever might be said were this a question of procedure in the federal courts, regard for our system of federalism requires that matters such as this be left to the States. However strong may be one's inclination to hasten the day when *in forma pauperis* criminal procedures will be universal among the States, I think it is beyond the province of this Court to tell Illinois that it must provide such procedures.

---

[10] 58 Stat. 5, 28 U. S. C. §§ 753 (f), 1915 (a). On the prior federal practice, see, *e. g., Estabrook* v. *King,* 119 F. 2d 607, 610 (C. A. 8th Cir.) ; *United States* v. *Fair,* 235 F. 1015 (D. C. N. D. Calif.).