## Commonwealth ex rel. Alexander v. Banmiller

*Joseph P. McLaughlin*, Assistant District Attorney, and *Victor H. Blanc*, District Attorney, for Commonwealth.

*John Alexander*, p.p. for relator.

HAGAN, J., September 17, 1957.— Relator, John Alexander, was tried on March 29, 1955, before Kun, P. J., and a jury, and was found guilty on bills nos. 144 and 146, February sessions, 1955, charging defendant with carrying a concealed deadly weapon and armed robbery. He was sentenced to 8 to 20 years in the Eastern State Penitentiary.

On May 3, 1957, relator filed a petition for writ of habeas corpus, which was dismissed on May 17, 1957.

From that action relator has taken an appeal to the Superior Court, and this opinion is written in accordance with rule 43 of the Rules of the Superior Court of Pennsylvania.

We have carefully reviewed the record of the trial at which relator was convicted, and it discloses the following facts:

Two witnesses for the Commonwealth, Gardner and Block, testified that they were in Block's store, located at 2910 Ridge Avenue, Philadelphia, at about 2 p.m. on the afternoon of February 1, 1955, when two men came into the store and held them up. Both of the bandits had revolvers, one a Luger and the other of an unidentified type. After rifling the contents of the cash register, they ran up Ridge Avenue, with Gardner and Block giving chase. Gardner chased the two men until they disappeared in the vicinity of a motion picture theater. Gardner, accompanied by several police officers, then went into the theater to look for the bandits. The police officers ordered the lights turned on, and Gardner then identified two men within the theater as the men who had committed the robbery. These two men were relator, John Alexander, and James Grant, who was Alexander's codefendant at the trial. Relator and Grant were then taken to the police station, where both were positively identified by their two victims within one hour after the robbery.

One James King testified for the Commonwealth that he was in the theater when Alexander and Grant came in together and sat down beside him. One asked the other: "Where do you want me to put this?", and the other replied: "Under the seat". The two men then took off their jackets and placed them upon a seat, and one of them placed an object underneath a seat. The police officers who apprehended Alexander and Grant, upon examining the area around the seats where they had been sitting, discovered a Luger pistol

under one seat and another pistol in the coat pocket of one of the codefendants. They also discovered $10 in bills and $12.12 in change in one of the coats.

The police officers who interrogated Alexander and Grant testified that both denied that they had participated in the robbery and also denied that they had gone into the theater together. Grant told them that Alexander was a friend of his, whereas Alexander denied knowing Grant.

Alexander testified at the trial and denied having anything to do with the robbery, and he also denied the testimony of all the witnesses called in the prosecution's case. Grant testified that he was in the vicinity of the theater, although he did not live near it, because he had an appointment near the theater to have his "hair did". While at the barber shop, some men had informed him that the two pictures playing at the nearby theater were very good, and that is how he happened to be at the theater at the time he was apprehended. He also denied having anything to do with the robbery and denied all of the testimony presented in the prosecution's case.

On the basis of the foregoing evidence, relator and Grant were both found guilty by the jury, and in light of the overwhelming evidence against them it is inconceivable that the jury could have done otherwise. Although both relator and Grant had prior criminal records, the trial judge gave relator a greater sentence than Grant because relator's record was more serious, relator having previously been found guilty on three bills of armed robbery and one of aggravated assault and battery.

The petition for a writ of habeas corpus filed by relator is the now common catch-all of conclusions, vague allegations and incorrect statements of law. It is extremely difficult, therefore, to determine what relator's complaints are, but we have examined the

petition thoroughly and have culled out the various complaints contained therein, which we shall now discuss.

Relator's primary complaint appears to be his dissatisfaction with the manner in which his counsel conducted the defense. This, of course, is one of the most commonly raised and least successful grounds employed by convicted defendants. We have examined the record and are convinced that there is no basis for this contention. In light of the overwhelming evidence against relator, his counsel did all that could have been done in his behalf. See Commonwealth ex rel. Comer v. Maroney, 178 Pa. Superior Ct. 633; Commonwealth ex rel. Dion v. Tees, 180 Pa. Superior Ct. 82; Commonwealth ex rel. Koffel v. Myers, 184 Pa. Superior Ct. 270.

Relator also complains of the fact that he was not asked by the trial judge why sentence should not be imposed. This, of course, is a requirement only in capital cases.

Relator also avers that he was brutally treated by the police. Even if this were so, it did not prejudice his rights at the trial, since it did not result in a confession on his part. To the contrary, the police officers testified that relator denied any participation in the crime.

Relator has also made vague allegations to the effect that he was not given a copy of the notes of testimony, that he was not present when the jury was sworn, and he also complains of the fact that his petition for writ of habeas corpus was dismissed without affording him a hearing. It is well settled that a relator's petition for habeas corpus must be self-sustaining, and specifically must aver facts which will entitle him to an award of the writ and a hearing upon it: Commonwealth ex rel. Paylor v. Johnston, 180 Pa. Superior Ct. 228, 231. In Commonwealth ex rel. Comer v. Maroney, supra, it

was stated, at page 638: "Where the petition itself or where the record upon which it is based or both together fail to clearly make out a case entitling a relator to the belief afforded by habeas corpus, a hearing is not necessary".

In view of the above quoted cases, together with the cases holding that there is a presumption of regularity of the proceedings resulting in conviction (Commonwealth ex rel. Jackson v. Day, 179 Pa. Superior Ct. 566; Commonwealth ex rel. Dion v. Tees, supra), and the fact that relator was represented by counsel at the trial, we hold that the averments in his petition were insufficient to require a hearing on the question of whether relator was permitted to challenge the jury.

On the basis of the law and facts above cited, relator's vague statements to the effect that he was not given a copy of the notes of testimony were insufficient to require the court to grant a hearing on his petition. Relator has relied heavily in this respect upon the case of Griffin v. Illinois, 351 U. S. 12. Relator has, however, misconstrued the holding in that case. It held that, where the laws of a State do not permit an indigent defendant to secure a copy of the notes of testimony without cost, defendant has been denied due process of law. In Pennsylvania, however, a defendant who requests a copy of the notes of testimony is entitled to receive them at the cost of the county: Act of May 1, 1907, P. L. 135, as amended, 17 PS §1802. However, in this case relator does not set forth specific facts from which it can be concluded that he properly asked for and was refused a copy of the notes.

For the foregoing reasons relator's petition for a writ of habeas corpus was properly dismissed.