**UNITED STATES of America ex rel. Louis ROBERTS, Petitioner-Appellant,**

**v.**

**Hon. J. Edwin LaVALLEE, Warden of Auburn State Prison, Auburn, New York, Respondent-Appellee.**

**No. 199, Docket 30240.**

United States Court of Appeals Second Circuit.

Argued Nov. 10, 1966.

Decided Feb. 7, 1967.

Rehearing and Rehearing in banc Denied March 10, 1967.

---

Warren H. Greene, Jr., New York City, for petitioner-appellant.

Michael H. Rauch, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of State of New York, and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondent-appellee.

Before LUMBARD, Chief Judge, and MEDINA and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge:

Louis Roberts appeals from the denial of a writ of habeas corpus by the Northern District of New York for which he petitioned on the ground that his 1962 conviction in the Queens County Court for robbery, grand larceny, and assault should be nullified because he did not have at his trial a free transcript of the preliminary hearing before the magistrate, otherwise obtainable upon payment of a fee, see N.Y.Code of Crim.Proc. § 206, and thus was denied equal protection of the law. As we conclude that application of the New York law should be determined by the New York courts in view of People v. Montgomery, 18 N.Y.2d 993, 278 N.Y.S.2d 226, 224 N.E.2d 730 (Dec. 30, 1966) *(per curiam)*, we dismiss the petition without prejudice to any further determination by the district court, upon any later application, of the questions raised, in the light of further proceedings in the state courts.

At Roberts' trial, the evidence showed that on Saturday night, January 27, 1962, his victim, Nathan Waxman, had just parked his car. Roberts reached in the window, opened the door, and held a knife at Waxman's throat and demanded his money. Waxman gave him his money and as Roberts searched him for more Waxman sprang from the car and shouted for the police. Officer Charles DeCosta was nearby and responded immediately and when Waxman pointed to Roberts, who was running away, DeCosta ordered him to stop. Roberts was found with the money in his possession. DeCosta found a knife at the side of Waxman's car which Waxman identified as the knife used by Roberts.

Two days later, on Monday, January 29, Roberts and his counsel appeared at the preliminary hearing before the magistrate. After Waxman and DeCosta had testified, Roberts was held for the grand jury, and was later arraigned in March, again with counsel present. On May 14 when the case was called for trial, Roberts appeared with the same counsel. He then complained about his counsel and wished new counsel, although he said he

could not afford to get his own lawyer. The judge denied his request. At the same hearing Roberts said he wanted the minutes of the preliminary hearing. After further colloquy, neither Roberts nor his counsel pressed the request for the minutes.[1] No other application or request for the hearing minutes was made at the trial or at any other time and the minutes were never transcribed.

Counsel requested and did have available at the trial a transcript of the grand jury testimony of Waxman and DeCosta and the complaint sworn to by Waxman on the day Roberts was arrested. At trial, counsel made no use of the grand jury minutes or the complaint in cross-examining Waxman and DeCosta. There is no reason to believe that the testimony of Waxman and DeCosta at the preliminary hearing was not substantially the same as their testimony at trial. Nor were any questions put to Waxman or DeCosta regarding their testimony at the preliminary hearing.

Roberts appealed his conviction and urged as one of the grounds for reversal his failure to obtain the minutes of his preliminary hearing. The Appellate Division affirmed without opinion, Roberts v. State of New York, 22 A.D.2d 853, 254 N.Y.S.2d 826 (2d Dep't 1964). Leave to appeal to the New York Court of Appeals was denied by Judge Fuld on January 4, 1965. The United States Supreme Court subsequently denied a petition for certiorari, 381 U.S. 956, 85 S.Ct. 1815, 14 L.Ed.2d 727 (1965). Roberts then petitioned the District Court for the Northern District.

Although Roberts has exhausted his state remedies, we are constrained to hold that he should apply again to the state court because the Court of Appeals in People v. Montgomery, supra, has recently passed upon the effect of denying a copy of preliminary hearing minutes to an indigent defendant. While such questions as whether or not Roberts made a suitable request for the minutes and if so, whether the request was then denied by the trial judge or later abandoned by Roberts, are by no means free from doubt, it at least appears probable that the state court would now grant relief if there is a basis in the record for doing so. Compare People v. Montgomery, supra, with People v. Robinson, 48 Misc.2d 799, 265 N.Y.S.2d 722 (Sup.Ct.1965); see also N.Y. County Law, McK.Consol. Laws, c. 11, § 722–c, eff. Dec. 1, 1965.

It also seems clear that the state courts will pass upon this question in a petition for a writ of habeas corpus, see People ex rel. Keitt v. McMann, 18 N.Y. 2d 257, 273 N.Y.S.2d 897, 220 N.E.2d 653 (1966). We think that whenever there is reason to believe that factual questions and their application to state law will be passed upon by state courts, the federal court should stay its hand in order to

---

1. "The Defendant: Yes. I explained to him that I was innocent, that I didn't want to plea guilty. I had asked him to build up a defense which I had already given him, and he keeps telling me to get the minutes. But I'm a poor man—

The Court: You can't get a transcript of minutes unless you apply for them.

The Defendant: I explained to him that I couldn't order the minutes and for him to get the testimony of the minutes, that that is my only defense.

The Court: The testimony of—

The Defendant: The complaint against me. When they have the hearing to compare the two complaints against me.

The Court: Well, under the law, Mr. Citak is an experienced lawyer, and he knows the same as I know, if that person takes the witness stand he is going to have an opportunity to ask for the grand jury testimony of that person and compare it to what he says on the stand. You see, he's protected in that record. He knows it.

Mr. Citak: Your Honor, I think what the defendant is referring to are the minutes in the Magistrates Court.

The Court: You can't get that until you have it transcribed.

Mr. Citak: I told him of that fact, but apparently he's unwilling to accept that fact.

The Court: Well, do you want him to pay for it?

The Defendant: As I explained the case to him, he shows me—wherein he shows me he doesn't believe that I am innocent. I feel if I go to trial with this lawyer I would be convicted. * * *"

permit plenary examination by the state court. See United States ex rel. Martin v. McMann, 348 F.2d 896 (2 Cir. 1965); United States ex rel. Bagley v. LaVallee, 332 F.2d 890, 892 (2 Cir. 1964); also Case v. State of Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965).

■ It has long been recognized that the primary responsibility for the administration of criminal justice must rest with the state courts themselves. When the constitutional necessity for federal court intervention is open to doubt, the question ought to be decided in favor of permitting a state court determination in the first instance. Such a policy is based in part upon the principle of comity, in part upon a desire to avoid unnecessary constitutional decision, and upon a belief that state courts will function best in our federal system when given a full opportunity to assume and discharge their primary responsibility.

We express no opinion on the factual or legal issues raised by the petition. We dismiss the petition without prejudice to the renewal of the questions raised in the district court and on this appeal in the light of further proceedings in the state court.

MEDINA, Circuit Judge (dissenting):

I dissent because I think relator's case was ripe for decision at the time of oral argument on November 10, 1966, that it is ripe for decision now and that he should be given relief now. To cast doubt upon relator's right to relief, bar immediate resort to the Supreme Court by application for certiorari, and then in effect remand the case to the state courts for the possible application for an uncertain state remedy seems to me to work great prejudice to appellant and to be a procedure not justified by the niceties of federalism.

The real difference between my brothers of the majority and me stems from the fact that I believe Roberts is entitled to the relief he prays and my brothers are of a contrary view.

At the root of the case is N.Y.Code of Criminal Procedure, Section 206, a statute of ancient vintage, that reads:

§ 206. *Defendant entitled to copies of depositions and statement*

If the defendant be held to answer the charge, the magistrate or his clerk having the custody of the depositions taken on the information or examination, and of the statement of the defendant, must, on payment of his fees at the rate of five cents for every hundred words, and within two days after demand, furnish to the defendant, or his counsel, a copy of the depositions and statement, or permit either of them to take a copy.

From the time of the oral argument I have been of the opinion that this state statute plainly violates the Fourteenth Amendment to the United States Constitution in that it deprives defendants in criminal cases of the equal protection of the laws and of their liberty without due process of law. That this invidious distinction between the rich and the poor is repugnant to the federal constitution is, in my judgment, established by a long line of modern Supreme Court rulings. Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892 (1963); Draper v. State of Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Johnson v. United States, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593 (1957), reversing 238 F.2d 565 (2 Cir. 1956); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

In view of the memorandum of the New York Court of Appeals in People v. Montgomery, filed on December 30, 1966, and quoted in full in the margin,[1] my brothers of the majority do not ap-

1. MEMORANDUM:
   Judgment reversed and case remitted to the Supreme Court, Queens County, for new trial. The state is to make available to defendant a transcript of the preliminary hearing.
   When the state constitutionally or statutorily affords a defendant a right, the

pear to disagree with my views on the federal constitutional issue. But there is more to the case than this.

What are the questions my brothers say "are by no means free from doubt"? What are the uncertainties to be resolved perhaps by the state courts after this dismissal here of Roberts' claims of deprivation of federal constitutional rights? I do not agree that these uncertainties exist.

The demand by Roberts for a copy of the minutes of the preliminary hearing is clear and unequivocal. So also is the fact that the minutes were not forthcoming. As Section 206 had been in effect for many years, it is not strange that the judge in the state court did no more than ask Roberts if he could pay for the minutes. As he was an indigent, represented by assigned counsel, he replied that he was without funds to pay the stipulated fee required by the terms of the statute. There was no further discussion nor was there any occasion for further discussion. I am at a loss to understand the basis for the claim of the prosecution that Roberts abandoned his request for the minutes.

Nor can I agree that the demand by Roberts was not timely. It seems to be thought that the demand should have been made or renewed at the trial. My view, however, is that Roberts was entitled to the minutes of the preliminary hearing not merely for the purpose of cross-examining witnesses produced by the prosecution at the trial but also for the general purpose of preparing for trial. Surely a defendant able to pay for these minutes would procure them at the earliest possible moment to assist generally in his preparation for the trial. The fact that Roberts and his counsel heard what the witnesses said seems to me to be immaterial. He had a statutory right to the minutes and the limitation of this right to those able to pay is invalid and void.[2] Nor do I think the fact that Roberts had access to the grand jury minutes but did not use them at the trial for purposes of cross-examination has any relevancy to the issue before us now. Neither the minutes of the preliminary hearing nor the grand jury minutes are before us. For all we know a comparison of the two would show serious contradictions in the testimony of the prosecution witnesses.

exercise thereof cannot be conditioned upon the defendant's ability to pay (People v. Hughes, 15 N.Y.2d 172, 256 N.Y.S. 2d 803, 204 N.E.2d 849; People v. Pride, 3 N.Y.2d 545, 170 N.Y.S.2d 321, 147 N.E. 2d 719; Long v. District Court of Iowa, 87 S.Ct. 362; Lane v. Brown, 372 U.S. 477, 83 S.Ct. 768, 9 L.Ed.2d 892; Douglas v. State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585). Section 206 of the Code of Criminal Procedure provides that where a preliminary examination was held and testimony recorded, the magistrate or his clerk must, "upon payment of his fees," within two days after demand, furnish the defendant or his attorney a copy of the statement taken at the hearing. There is no doubt that § 206 affords one who is capable of paying for it an absolute right to a transcript of the preliminary hearing. Thus, the state cannot, consonant with the equal protection clause of the State

and Federal Constitution, deny a defendant, prior to trial, access to a transcript of a preliminary hearing because of his inability to pay (cf. People v. Jaglom, 17 N.Y.2d 162, 165, 269 N.Y.S.2d 405, 216 N.E.2d 576). We hold, therefore, that when a defendant requests a transcript and when that request is accompanied by an affidavit of indigency, the state must honor that request. We add one caveat. The request for a transcript should be made far enough in advance of trial to give the state a reasonable amount of time to transcribe the minutes and to avoid the necessity of suspending the trial pending the production of the transcript.

Judgment reversed and a new trial ordered. Memorandum opinion. All concur.

2. It is significant that the New York Court of Appeals in *Montgomery* indicated that they would require defendants to demand a transcript before the trial began. Perhaps if relator had made his demand at any later point it then would not have been timely.

As I stated at the beginning of this dissent, the case at the time of oral argument was ripe for decision. It cannot be doubted that state remedies on the very point at issue were available to Roberts and the proof is plain that he had fully exhausted them. If, as I think, Roberts is entitled to relief, why should we not give him the relief to which he is entitled?

To muddy the waters with intimations that his right to relief is uncertain and doubtful and then dismiss the case so that Roberts can start all over again in the state courts is surely a disservice to Roberts whose federal constitutional rights have been infringed. The delay cannot fail to be prejudicial to him. I submit the delay is wholly unnecessary.

The three cases cited by my brothers show clearly enough that when a state belatedly grants a procedural device through which a defendant may pursue his conceded federal right, the federal courts will dismiss the case to enable the defendant to exhaust his "presently available" state remedies. By so dismissing the federal courts protect their calendars and reduce their action in state criminal matters. But that is not our case. No new state procedural remedy has been made available to relator. And no short-circuiting of state procedures is involved. Rather, a federal remedy has been supplemented by a substantive state remedy. But the law is clear that the exhaustion of state substantive remedies is not a precondition to the granting of federal relief. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). Cf. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

In Stapleton v. Mitchell, 60 F.Supp. 51 (D.Kan.1945), the then Judge, now Chief Judge Murrah, wrote:

We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum.