David L. Malbin, J.
This is an application pro se in the nature of a writ of error coram nobis. It seeks leave for the defendant to file a notice of appeal despite the fact that the period of time allowed by law for such filing has expired.
*706 The defendant-petitioner was jointly indicted on September 26, 1962, with two other codefendants for the crime of murder in the first degree. This defendant was brought to trial on April 29, 1963. The trial proceeded until May 6, 1963, at which time the defendant (in the presence of counsel) pleaded guilty to murder in the second degree.
Thereafter, on October 14, 1963, the defendant was sentenced, to State Prison for a term of which the minimum was to be 30 years to life.
The petitioner seeks1 the invalidation of the aforesaid judgment of conviction, and contends that he has been deprived of the right to take an appeal through no fault of his own.
It is unnecessary for the purpose of this application to refer to the prior coram nolis that was reviewed by the Appellate Division of the Second Department, and on ¡December 14, 1964, unanimously affirmed (22 A D 2d 1017) the order denying the application for. a writ of error cor am nolis in that matter. ,
The present motion is based upon a claim that the defendant was hindered and prevented by the prison authorities from filing a timely notice of appeal “ because of prison authorities’ refusal to mail his timely notice of appeal because he was bereft of necessary postage to defray mailing ”. It is quite obvious that unless the defendant-petitioner is afforded an opportunity to take an appeal from the judgment rendered against him he will be deprived of appellate review; he cannot make due and timely compliance with section 521 of the Code of Criminal Procedure, which states: “ appeal * * * must be taken within thirty days after the judgment ”. The District Attorney raised no objection to granting the petitioner’s request for a hearing, and on April 15,1965, the court granted the petitioner’s request and ordered a hearing to be conducted on the foregoing application (see People v. Masselli, 17 A D 2d 367; People v. Esposito, 37 Misc 2d 386; People v. Hairston, 10 N Y 2d 92). Upon the hearing the defendant was represented by assigned legal aid. A brief reference to the testimony follows. The notice of appeal was received in evidence and marked petitioner’s exhibit 1.
‘ ‘ Q. What institution were you confined in at the time * * * A, G-reenhaven.
“ Q. After you drew up the notice of appeal what did you do with it? A. I brought it to the head clerk so that he could sign it and stamp it. .
“ Q. After that was done what did you do? Did you leave it with him?
“ The Witness : He kept the .papers and in the evening he sent them back to mé because there was no seal on it; no stamp.
*707 “Q. Who filled out the writing on the form?
“ The Witness : A friend of mine.
“Q. Did they give you any further explanation as to why the notice of appeal was returned to you? A. The officer told me that it could not go out because it had no stamps, and when I had stamps, then it could be sent out.
“ Q. You say that you sent this exhibit, the notice of appeal * * *, and you gave it to the clerk to have it mailed, in the prison, is that right?
“ The Witness : Yes, I gave it to the clerk.
“ Q. And it was returned to you for lack of postage. You didn’t have stamps to mail it; is that correct?
“ The Witness: Yes, sir.
‘ ‘ By the Coukt : Let us try to narrow the issue down to whether or not, in good conscience and in the interests of justice, and based upon his application, there is sufficient evidence submitted to the court that would warrant the court to grant the relief sought, and that it would necessitate the vacating of the judgment of conviction and resentencing him again so that he can take an appeal from the judgment as of the time the new sentence was imposed, that is, if the court should determine that it should be done that way.
“ Q. How did you send your letters out? A. The letters are made and they are placed in a box and the court papers are taken out by the clerk so that he can sign them.
“ Q. Who takes them to a clerk so that he can sign them?
“ Q. My question, Mr. Comacho, is how do you mail something in Grreenhaven? A. I explained it to you that the letters are put in a box and they are picked up, and I don’t know what happens to them thereafter.
“ Q. Do you place a stamp upon the letter? A. No, sir.
“ Q. How does the stamp get there, if you know? A. I don’t know. They put the stamps on over there.
“ Q. This notice of appeal, when was it returned to you? A. In the evening.
“ Q. Of the same day? A. I think it was the same day, but I don’t remember it too well.
“ Q. Could it have been the next day? A. I don’t remember too well, sir.
“ Q. What did you do when you got it back? A. I kept it. What was I going to do with it if I didn’t have a stamp ?
11 Q. Did you ask anyone if you could get hold of a stamp? A. How can I ask anyone if no one has a stamp. The only people that have stamps are the people in the front.”
*708 The petitioner was the only witness who testified in his behalf. It may be noted that there was a language barrier and he required the services of the official interpreter. It is noteworthy to observe that the notice of appeal was offered for mailing through the proper official prison channels on the 12th day of November, 1963, and it is not clear when the purported notice of appeal was returned to the prisoner with a notation which is indicated by an exhibit indorsed thereupon, a notation as follows: “No stamps.”
The People called as a witness the head clerk of Greenhaven Prison, and a part of his testimony taken from the transcript follows:
“ Q. Will you tell us when this defendant got to Greenhaven; what date? A. Transferred to Greenhaven from Sing Sing November 4,1963.
“ Q. At that time what was the procedure for an inmate mailing any legal mail. If he wanted to mail a legal notice of some kind, specifically a notice of appeal, what was the procedure? A. Each inmate is given a weekly Sunday letter from pre-paid postage. The State pays the postage. He can send that letter to anyone he chooses.
“ Q. What do you mean by pre-paid Sunday letter?
‘ ‘ The Witness : Once a week each inmate is entitled to a free letter on which the State pays the postage.
“ Q. Are there any exceptions to the rule where a prisoner is not in segregation? A. No, it applies to all inmates not in segregation.
“ Q. This defendant was not in segregation during that time? A. No, he was not.
“ Q. What was the procedure if a prisoner wishes to mail something during the week? A. If he had not used the free Sunday letter, he was at liberty to use it during the week, or a maximum of three special letters that he would have to pay postage on.
“ Q. And he gets free postage for three other letters? A. No, he has to pay postage on these three other letters.
“ Q. Was the procedure in the prison at that, time to advise the prisoners upon their arrival of these mailing rights? A. That is correct.
“ Q. ITow wore they advised? A. By the cell block officer in ‘ A ’ block, which is where all new prisoners are assigned when they are transferred to Greenhaven.
“ Q. As to this particular prisoner, did he have any stamps in his fund when he arrivedf A. The record shows he did not have stamps.
*709 “Q. In terms of mailing privileges, then, does that mean he was only allowed his free Sunday letter? A. One free Sunday letter per week.
“ Q. When did his record indicate for the first time that he had stamps in his fund; on what date? A. About a year later, on September 3,1964.
“ Q. Therefore, until that time he could only mail one letter a week? A. That’s right.
“ Q. What was the procedure if a prisoner told his company officer he had a notice of appeal which he wished to mail? A. He could tell him to write his letter on a letterhead and if he had no stamps, he would give him a Sunday letterhead for that week which he could use for that purpose.
“ The Court: Suppose he already used the one Sunday letter?
‘ ‘ The Witness : Then he would have to wait until the following week when he got the free Sunday letter.
“ The Court: I want to get this clear, if possible. I understand you to say that when this petitioner arrived in Qreenhaven on November 4,1963, from Sing Sing, the record that you have there, that carries with him from Sing Sing, and it is indicated that he had no postage to his credit, is that right?
“ A. That is true your Honor.
“ The Court: Do they get any extra stamps or postage from the institution?
“ The Witness : No, sir, only the free weekly letter.
“ The Court: So that if a prisoner is without any funds or means whatsoever, and he wants to address two or three letters during a week, they will only be posted if he puts on the postage?
11 The Witness : That is correct.
“ The Court: And even if it might be a letter sent to some court * * *, any court, the Supreme Court in Washington or in New York, if he hasn’t the postage to his credit that letter is not mailed until he gets the free Sunday letter that he can use?
u The Witness : That is true.
1 ‘ The Court : It is hardly believable. If a defendant had used his Sunday privilege, and he came to you after that time, say on Monday and he stated to you that he had a notice of appeal which he could not file after a certain day of the week, would any special privilege be granted to that defendant?
‘ ‘ The Witness : He would be advanced his next week’s Sunday letter and be allowed to write it at that time, which would take the place of next week’s -Sunday letter.
* ‘ By the Court : They have no direct communication with you as the head clerk or administrative officer in charge of the clerks ?
“A. No, sir.
*710 “ Q. Now 1 direct your attention to a red penciled writing across Petitioner’s Exhibit 2, which seems to say ‘ No stamps.’ Bo you recognise that at all? A. Tes, evidently it was marhed in the Correspondence Censor’s Department, and the letter was returned to the inmate.
“ The Court: Does the Petitioner’s Exhibit 2 indicate when that notation ‘ No stamps ’ was placed on the slip?
“ The Witness: No, sir, it does hot.
“ The Court: Tour notarization appears on Petitioner’s Exhibit 1 in evidence, which purports to he a notice of appeal, isn’t that so?
“ The Witness : Yes, sir.
‘ ‘ Q. And this was sworn to before you, and you also have the office of notary public? ' ‘ ’
u The Witness: Yes, sir.
“ Q. It is indicated that it was sworn to before you on the 12th day of November, 1964?
“ The Witness: That is correct.
tc Q. Would that now refresh your recollection as to thé fact that Petitioner’s Exhibit 2 in evidence, the stub1, let us call'it, was received in your office and the order written there, ( No stamps ’ occurred sometime after or at least the same day November 12th f A. November 12th, yes.
“ Q. Does that portray the fact that the petitioner was before you when you. took his acknowledgement?
' “ The Witness: He was.
“ Q. So that on the 12th of November, 1963, this notice of appeal was observed by yon, to say the least? :
“ The Witness: Yes it was received by mb, I keép them after I notarize them.
u Q. Then it would follow that after you retained that notice of appeal, which is Petitioner’s Exhibit 1 in evidence, then yon found out by looking' into this imriate’s account.
“ The Witness: Yes, sir.
“ The Court : That he had no postagb? tl The Witness: That is correct." " '
ce The Court : One of your clerks, after it had been ascertained that he had no stamps to his credit, endorsed on there, '* No stamps ’ and then that was normally returned to the inmate!
‘ ‘ The Witness r Yes, sir." :
“ The Court-: Can- a prisoner through his visitors or through someone buy a supply of stamps to- be credited to him?
“ The Witness: Yes, sir,' or they can receive them in their letters, in the mail.
*711 “ Q. You observed that this was a notice of appeal?
“ The Witness: I did.
“ Q, At any rate if you had known that this inmate * * *
If you knew that this man’s right to appeal would expire on the 14th, two days after you took his acknowledgment, you would have without question, notwithstanding that he had no postage, you would have seen to it that it got mailed?
‘ ‘ The Witness : If he mentioned it, it would have been charged as his next Sunday letter. He already sent a Sunday letter on November 12th. On the 12th he submitted a second Sunday letter.
“ The Court: But you are very frank and honest about this * * * some of these inmates, particularly a man that has a

language barrier, and being a new arrival, it is a very likely situation that they are not familiar with the procedure, isn’t that sof

“ The Witness: That is true.”
(Emphasis supplied.)
The foregoing constituted a brief reference to some of the testimony adduced at the hearing. The question to be determined is whether or not the prisoner was unjustly deprived of his statutory right to file his notice of appeal. It is quite true that the administration of the affairs of the State Prison institution is in the hands of the authorities charged by law to carry out the proper regulatory processes. It is not for this court to promulgate a set of rules. However, it would clearly appear from the uncontroverted testimony adduced, not only by the petitioner but by the prosecution’s witness, the head clerk of the prison institution, that the general method pursued in transmitting important legal papers was discriminatory and could vitally jeopardize the rights of indigent inmates and thereby deprive them of a substantial constitutional right. This defendant-petitioner who was apparently without any accrued postage and without any means to receive or purchase any stamps was prevented, through no fault of his own, from filing a due and timely notice of his appeal. Whether or not the basis of the appeal is substantial or meritorious is not the criteria, the only question to be determined; was the petitioner deprived of a substantial right that amounted to a denial of due process of law?
It is the contention of the petitioner Comacho that he was wrongfully prevented by prison authorities from complying with the statutory requirement for the taking and perfecting of an appeal from a judgment of conviction because of their failure to forward his notice of appeal due to his failure to have proper postage.
*712 In People v. Adams (12 N Y 2d 417, 420) Chief Judge Desmond stated: “ One wrongfully prevented from talcing or perfecting such an appeal is ‘ entitled to judicial redress ’ by way of coram nobis where no other avenue of judicial relief is available.”
The law is firmly established that if a prisoner’s contention that he has been unjustly deprived of his right to appeal through no fault of his own it becomes a matter of serious concern to the court.
Our State has always regarded the right to appellate review in criminal matters an integral part of our judicial system and treated it as such. (People v. Pride, 3 N Y 2d 545, 549.) It was stated by Judge Burke, writing for the majority in People v. Pride (supra, pp. 549-550):
“ Since long before the Supreme Court’s pronouncement (Griffin v. Illinois, 351 U. S. 12), it has been the consistent policy of our courts to preserve and promote that right as an effective, if imperfect, safeguard against impropriety or error in the trial of causes. * * *
‘ ‘ It is a facile and logical progression, one that would have been made even without the assistance of constitutional pronouncements, from the principle underlying the above-cited cases to the decision required here. However, now this decision is for the most part made for us, not alone as a matter of our own public policy, but as one of constitutional necessity. * * * “ The United States Supreme Court has held that the failure to afford both indigent and financially competent defendants the same right and ability to an effective review, where the State has seen fit to grant the right of appellate review, is a violation of both the equal protection and due process clauses of the Federal Constitution (Griffin v. Illinois, 351 U. S. 12, supra). According to that decision a procedure that would permit review to a person able to afford the price of a transcript but deny it to one whose lack of financial means makes it impossible to obtain the necessary papers, constitutes an unlawful discrimination against the latter and deprives him due process of law. * * * The disparity of treatment, occasioned only by differing financial situations, deprives the indigent defendant the fair and equal treatment guaranteed him by the Constitution.”
The proof adduced at the hearing clearly established that the undisputed reason that prevented the prisoner from filing a due and timely notice of appeal was the failure of the prison authorities to forward the petitioner’s letter to the Appellate Division because he was without means to furnish sufficient postage. The facts and circumstances present the same element of discrimination as is found in the Pride case (supra). It *713 unquestionably appears that the petitioner would not be in this predicament if it were not for his lack of funds to supply himself with the necessary postage. “ This is repugnant both to our own public policy and to the judicially declared constitutional requirements.” (People v. Pride, supra, p. 550.)
Judge Fuld, writing for the Court of Appeals in a unanimous decision, stated in People v. Hairston (10 N Y 2d 92, 93, supra): “If his assertions are established, there can be no doubt * * * that the defendant was denied rights guaranteed by both Federal and State Constitutions, entitling him to judicial redress to undo the wrong.”
The circumstances upon which this proceeding is predicated also fall squarely within the facts advanced in the Hairston case {supra).
The Federal Constitution, Sixth Amendment provides: “In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence.”
Mr. Justice Black, in delivering the opinion of the court in Gideon v. Wainwright (372 U. S. 335, 343) said: “ 1 [The assistance of counsel] is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty * * * The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not “ still be done.” ’ Johnson v. Zerbst, 304 U. S. 458, 462 (1938). To the same effect, see Avery v. Alabama, 308 U. S. 444 (1940), and Smith v. O’Grady, 312 U. S. 329 (1941).”
In Douglas v. State of California (372 U. S. 353 [1963]) the record shows that the petitioners requested and were denied the assistance of counsel on appeal even though it plainly appeared they were indigent. Mr. Justice Douglas in delivering the opinion of the court at page 355 stated:
“Here the issue is whether or not an indigent shall be denied the assistance of counsel on appeal. * * * For there
can be no equal justice where the kind of an appeal a man enjoys ‘ depends on the amount of money he has.’ Griffin v. Illinois, [351 U. S. 12], supra, at p. 19.” The court further stated (pp. 355-357): “ In spite of California’s forward treatment of indigents, under its present practice the type of an appeal a person is afforded in the District Court of Appeal hinges upon whether or not he can pay for the assistance of counsel. If he can the appellate court passes on the merits of his case only after having the full benefit of written briefs and oral argument by counsel. If he cannot the appellate court is forced to prejudge the merits before it can even determine whether counsel *714 should be provided. At this stage in the proceedings only the barren record speaks for the indigent, and, unless the printed pages show that an injustice has been committed, he is forced to go without a champion on appeal. Any real chance he may have had of showing that his appeal has hidden merit is deprived him when the court decides on an ecu parte examination of the record that the assistance of counsel is not required. * * * When an indigent is forced to run this gantlet of a preliminary showing of merit, the right to appeal does not comport with fair procedure.”
■ Gideon v. Wainwright (supra) decisively established that when a request for an attorney was made, the right to the assistance of counsel was by the Sixth Amendment safeguarded in a Federal prosecution and which is a fundamental right and essential to a fair trial as the Fourteenth Amendment is a safeguard to a prosecution in a State court. It would seem quite clear and of necessity that the defendant-petitioner in the case at 'bar should not be deprived of his right to file an appeal solely because of his indigence and because he is bereft of the few paltry pennies that is required tó place a stamp for mailing on the envelope to forward the notice of appeal. To hold that this is not a violation of a substantial constitutional right would make a mockery of the law and would be a travesty against bur concept of fundamental fairness.
Quoting from the Douglas case (supra, p. 357-358) it is stated: ‘ ‘ The present case, where counsel was denied petitioners on appeal, shows that the discrimination is not between ‘ possibly good and obviously bad cases,’ but between cases where the rich man can require the court to listen to argument of counsel before deciding on the merits, but a poor man cannot. There is lacking that equality demanded by the Fourteenth Amendment where the rich man, who appeals as of right, enjoys the benefit of counsel’s examination into the record, research of the law, and marshalling of arguments on his béhalf, while the indigent, already burdened by a preliminary determination that his case is without merit, is forced to shift for himself. "The indigent, where the record is unclear or the errors are hidden, has only the right to a meaningless ritual, while the rich man has a meaningful appeal.”
Whether the petitioner Comacho in the case at bar has a meritorious and substantial appeal is not the criteria. It is for this court to determine whether he (Comacho) was deprived of a statutory right which amounted to a denial of due process of law by the prevention of an opportunity to file an appeal, ahd *715 especially when the proof decisively indicates that it was because of his lack of any funds.
The Gideon and the Douglas cases {supra) clearly indicate that in all criminal prosecutions the accused shall enjoy the right to assistance of counsel for his defense, and it is so made obligatory by the Fourteenth Amendment to the United States Constitution that an indigent defendant in a criminal prosecution in a State court has the right to have counsel appointed for him. The right to the aid of counsel was extended in the Douglas case which mandated that an indigent petitioner is also entitled to the aid of counsel.
Following the clearly established principles that indigent defendants are entitled to equal protection of the law, it seems to the court that a petitioner, after conviction, who is in prison should be accorded full and equal protection of the law.
In People v. Guhr (5 A D 2d 688, 689) the Appellate Division, Second Department, stated: “ We are convinced, however, that, if by reason of the action of the law enforcement or prison authorities, appellant has been prevented from complying with the statutory requirements for the taking and perfecting of an appeal from the judgment of conviction, he has been denied a right guaranteed by the equal protection clauses of the Federal Constitution (U. S. Const., 14th Amdt., § 1) and of our own Constitution (N. Y. Const., art. I, § 11) and some method of reviewing the conviction must be afforded him. (Cf. Dowd v. Cook, 340 U. S. 206; Cochran v. Kansas, 316 U. S. 255; Briggs v. White, 32 F. 2d 108; Beard v. Warden, 211 Md. 658; People v. Kalan, 2 N Y 2d 278.) ”
In People v. Coe (16 A D 2d 876) the defendant was, upon conviction of several crimes, sentenced to a term of 60 years to life. His assigned counsel told him that he would like to appeal “ but it would be impossible to do so because of lack of funds to pay for the transcription of the trial record and for printing papers on appeal.” The Appellate Division, Fourth Department, granted a hearing to determine whether or not the defendant was prevented by the acts of his assigned counsel from complying with the statutory requirements for the taking and perfecting of an appeal from the judgments of conviction.
Denial of relief to the defendant-petitioner will deprive him of his substantial right to have an appellate tribunal review the action of the trial court. Coram nobis is available only in those cases which “ involve the abrogation — without adequate remedy — of fundamental precepts either going to the jurisdiction of the court or resulting in the perpetration of a fraud upon the court.” (People v. Sadness, 300 N. Y. 69, 73-74.)
*716 Judge Fuld stated in People v. Sullivan (3 N Y 2d 196, 200) : “ the writ [of error coram nobis] is an emergency measure born of necessity to afford a defendant a remedy against injustice when no other avenue of judicial relief is, or ever was, available to him.”
It is quite apparent from a reading of the foregoing that when a prisoner has been unjustly deprived of a substantial right, through no fault of his own, the court should intervene and not leave him without redress or a remedy. (See People v. Hill, 8 N Y 2d 935; People v. Hairston, 10 N Y 2d 92, supra; People v. Coe, 16 A D 2d 876, supra; People v. Stanley, 12 N Y 2d 250.) The defendant-petitioner has successfully established his right to the post-conviction relief that he seeks. The interest of justice requires that the court grant the prisoner an opportunity to file his appeal.
The prisoner’s sworn petition has withstood the test in the court hearing, and moreover the testimony offered by the head administrative clerk of the prison not only did not controvert the proof offered by the petitioner but tended to confirm it. The prison rules or regulations now employed by the prison authorities seem to seriously interfere with the statutory rights of this prisoner and deprive him of an opportunity to comply with section 521 of the Code of Criminal Procedure. Any State rule which would prevent remedy or redress in a proper ease must be subordinated to the United States Constitution. Section 1 of the Fourteenth Amendment contains the following clause: “No State shall make or enforce any law which shall abridge the privileges or mandates of citizens of the United States, nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.”
The motion for writ of error coram nobis and the relief sought is in all respects granted. The judgment of conviction be and the same hereby is vacated and the petitioner-defendant is directed to be returned to the Supreme Court of Kings County at a Criminal Term thereof, forthwith, or at such time as it may be reasonably arranged, for the reimposition of sentence upon the verdict already had.
The District Attorney is directed to submit an order in accordance with the memorandum decision herein, and to serve a copy of said order and decision herein upon the legal aid representing the defendant, and also a copy of said order upon the defendant at the place in which he is presently incarcerated.