UNITED STATES of America ex rel.
Felix COMACHO, Petitioner-
Appellant,

v.

Harold W. FOLLETTE, Warden, Green
Haven State Prison, Stormville, New
York, Respondent-Appellee.

No. 384, Docket 33667.

United States Court of Appeals,
Second Circuit.

Argued Dec. 18, 1969.

Decided Feb. 2, 1970.

Judgment Vacated June 1, 1970.
See 90 S.Ct. 1728.

Gretchen White Oberman, New York
City (Milton Adler, Legal Aid Society,
New York City, on the brief), for appel-
lant.

Lillian Z. Cohen, Asst. Atty. Gen., of
New York (Samuel A. Hirshowitz, First
Asst. Atty. Gen., and Louis J. Lefkowitz,
Atty. Gen., of New York, on the brief),
for appellee.

Before FRIENDLY, SMITH and AN-
DERSON, Circuit Judges.

ANDERSON, Circuit Judge:

Felix Comacho was arrested on Fri-
day, August 3, 1962, as one of three sus-
pected participants in a pair of mug-
gings, perpetrated that evening in the
Bay Ridge section of Brooklyn. In the
second of these assaults, the victim re-
ceived fatal stab wounds.

Comacho was picked up sometime aft-
er 10:30 p. m. in the vicinity of the
scene of the second assault. With the
hope that an identification might be es-
tablished, the arresting officer took him
first to the hospital where the victim
was being treated; and from there he
was taken to a police station. On Satur-
day morning, after about 11 hours of
questioning, Comacho gave an assistant
district attorney a confession stating
that he and two drinking companions,
Villanueba and Ramos, had met and spo-

ken about a plan to "do a job," after which the two assaults occurred. He alleged, however, that his two companions alone had assaulted and slain the deceased. Comacho stated in his confession that he himself had stood by watching, some 30 feet away, then became frightened, and fled, in the course of which he was apprehended.

The search for Ramos, the third of the alleged participants, continued on Saturday. After he was picked up, all three were arraigned together on Sunday, August 5th. Villanueba and Ramos both confessed, and they apparently implicated Comacho as the member of the group who actually committed the fatal stabbing. They subsequently entered pleas of guilty to charges of second degree murder, and their cases were severed.

Comacho's trial for first degree murder commenced April 29, 1963. The prosecutor stated in his opening remarks that Ramos would testify against the defendant and name him as the actual killer. The People first called a witness to the fatal attack who said that one of the three assailants had worn a shirt like that in which Comacho was dressed at the time of his arrest. An off-duty police officer, who had joined in the chase, and the arresting officer both testified that when the appellant was apprehended on a nearby street, he was sweating profusely and panting. The arresting officer stated that the victim failed to regain consciousness so that no identification was made at the hospital.

When Comacho's confession was offered in evidence at the trial, the judge ordered a voluntariness *voir dire* before the jury, in accordance with the New York practice before Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). On the *voir dire*, Comacho testified through an interpreter that he was struck by the officers questioning him and given no food until Saturday night, that the police turned away his brother, who came to the precinct station to make inquiries, and that he told the court interpreter at arraignment that he had been injured. Various officers were present, and the appellant was asked to identify those who allegedly beat him. He identified three of the 16 called, and added that two others who struck him were not in the group. Several officers then denied his allegations.

The prosecutor next cross-examined Comacho concerning both of the assaults discussed in his confession, using the statements in it to impeach his credibility.

After a number of witnesses had testified on the *voir dire*, a brief adjournment was ordered. Comacho conferred with his appointed counsel and then offered to withdraw his not guilty plea and plead guilty to second degree murder to cover both this indictment and another outstanding against him for robbery, grand larceny, and assault based on the earlier mugging on the same evening. As part of the judge's colloquy with him prior to acceptance of the guilty plea, Comacho stated that he had served as a lookout for his two friends, but had not himself stabbed the victim.

At arraignment for sentencing, Comacho made a perfunctory request to withdraw his guilty plea "if I don't get a light sentence in this case." This equivocal request was not adhered to by his counsel, and he was sentenced to a term of 30 years to life imprisonment on October 14, 1963. The appellant now contends [1] that the guilty plea upon the

1. This question is the only one among the many raised by Comacho which is presently before us. In February of 1964, the appellant began *coram nobis* proceedings in a state court, alleging defects in his confession, in the representation provided by his two appointed attorneys, in his guilty plea, and in the fairness of his trial. The writ was denied without a hearing, and the Appellate Division affirmed. People v. Comacho, 22 A.D.2d 1017, 255 N.Y.S.2d 479 (2nd Dept. 1964). The New York Court of Appeals denied leave to appeal. Although Comacho did not file a timely notice of appeal from his conviction, this was

basis of which this sentence was imposed was involuntary, since a substantial factor inducing it was his inability to have the voluntariness of his confession determined in a constitutionally proper manner. The district court found the plea voluntary on the basis of an examination of the colloquy, concluded that this fact worked a waiver of any prior procedural defects, and denied the petition without a hearing, upon the authority of United States ex rel. Glenn v. McMann, 349 F.2d 1018 (2 Cir. 1965), cert. denied 383 U.S. 915, 86 S.Ct. 906, 15 L.Ed.2d 669 (1966).

After the lower court had rendered its decision, this court clarified the meaning of Glenn in United States ex rel. Ross v. McMann and its companion case, United States ex rel. Dash v. Follette, 409 F.2d 1016 (2 Cir.), cert. granted, 396 U.S. 813, 90 S.Ct. 65, 24 L.Ed.2d 67 (Oct. 13, 1969), dismissed as moot as to Ross, 396 U.S. 118, 90 S.Ct. 395, 24 L. Ed.2d 303 (Dec. 8, 1969). We explained that "[a]n alleged violation of constitutional rights is simply another factor to be taken into account in determining the voluntariness of the plea," 409 F.2d at 1021, but that " * * * a mere conclusory allegation by a prisoner without more, that the existence of a coerced confession induced his guilty plea, in the absence of any particularized allegations as to how that confession rendered his plea involuntary, should not ordinarily be considered sufficient to predicate an order for a hearing." Id. at 1022. (Footnote and citations omitted.) With regard to the requisite allegations of a

specific improper connection between a confession and a plea in each of those two cases in which defendants were unable to have the voluntariness issue determined by the court in the absence of a jury, this court held:

"The petitioner cannot be deemed to have waived his coerced confession claim by deliberately by-passing state procedures when the state failed to afford a constitutionally acceptable means of presenting that claim, and he cannot be deemed to have entered a voluntary plea of guilty if the plea was substantially motivated by a coerced confession the validity of which he was unable, for all practical purposes, to contest". Id. at 1023.

Comacho's petition alleges an almost identical causal connection between his claimed involuntary confession and subsequent involuntary guilty plea, and the particularized allegations concerning the confession and its relationship to the other evidence in the case have never been accorded a hearing by the state courts. Like the petitions of *Ross* and *Dash*, Comacho contends that the inadequacy of the pre-Jackson v. Denno voluntariness procedure, which offered no constitutional state method for challenging an allegedly coerced confession, had a critical effect upon his actions and substantially motivated the guilty plea. The only real difference in the fact patterns is that Comacho actually attempted to contest the voluntariness of his confession in the inadequate way provided him at the trial, before abruptly deciding to plead guilty to a lesser offense

found attributable to prison authorities' refusal to furnish a postage stamp; and his conviction was thereupon vacated as to his sentence. People v. Comacho, 46 Misc.2d 705, 260 N.Y.S.2d 723 (Sup.Ct. Kings Co. 1965). A sentence of from 30 years to life was again imposed; and Comacho's renewed attempt to withdraw his guilty plea was unsuccessful. The Appellate Division again affirmed, People v. Comacho, 27 A.D.2d 986, 281 N.Y.S. 2d 990, (2nd Dept. 1967), and leave to appeal to the Court of Appeals was denied. The appellant once more began a *coram nobis* action, claiming that the

victim had stated at the hospital, before he died, that Comacho was not one of his assailants; that an officer committed perjury in denying this at the trial; and that the prosecutor and trial judge had promised him a five-year sentence. The application was again denied, and an appeal is apparently still pending.

A variety of claims were raised in Comacho's habeas corpus application to the district court; but it is conceded that state remedies have not been exhausted in regard to some of them, and the court's rejection of others was not appealed.

after segments of the confession and its references to another assault were revealed to the jury as part of the *voir dire*. Ross and Dash, on the other hand, abandoned the effort to suppress their confessions as futile at an earlier stage and did not even try to convince juries of the alleged improprieties.

 In the present case, as in *Ross* and *Dash*, it cannot be ascertained from the record alone whether the ultimate decision to plead guilty was due to the weight of the evidence against the accused or was induced by fear of the prejudicial consequences of the jury's exposure to the evidence on the voluntary or involuntary nature of the confession. In Johnson v. New Jersey, 384 U. S. 719, 727–728, 86 S.Ct. 1772, 1777–78, 16 L.Ed.2d 882 (1966), the Supreme Court stated that the unconstitutional procedure for the jury's determination of the voluntary nature of a confession in and prior to Jackson v. Denno adversely affected "the very integrity of the fact-finding process," and it gave Jackson v. Denno retroactive effect. Comacho is, therefore, entitled to a hearing upon his allegations that the guilty plea was involuntary.

 With regard to Comacho's additional claim that his plea was further rendered involuntary because of his fear that Ramos or Villanueba would give false testimony[2] by naming him as the actual wielder of the murder weapon, it need only be said that such an allegation about possible perjured testimony does not suggest actual prosecutorial suppression of evidence or any other causal connection, as required by *Ross* and *Dash*, between a violation of constitutional rights and a defendant's decision to enter a guilty plea.

Reversed and remanded.

FRIENDLY, Circuit Judge (concurring):

I concur on the authority of United States ex rel. Ross v. McMann and United States ex rel. Dash v. Follette, 409 F.2d 1016 (2 Cir. 1969), the latter of which is now pending before the Supreme Court, 396 U.S. 813, 90 S.Ct. 65, 24 L.Ed.2d 67; 396 U.S. 118, 90 S.Ct. 395, 24 L.Ed.2d 303.

---

2. Comacho called the district court's attention to what he claims are written statements given to him by his co-defendants shortly after all three of them arrived at prison. The statement attributed to Villanueba names Ramos rather than Comacho as the actual killer; but that allegedly given by Ramos, who was the co-defendant scheduled to testify against Comacho, seems merely to disavow the entire crime on behalf of both himself and the appellant. As the trial court observed, even testimony of Comacho's participation in the crime merely as the lookout would be sufficient to support a murder conviction upon the theory of felony-murder. In commenting upon this point, the district court noted that it, like this court, had not seen the co-defendants' original statements, and also added that "at the time of the pleas and sentencings each of the co-defendants tried to shift the blame for the actual stabbing to another. It never became clear who, in fact, did the stabbing and the trial court did not consider the question in sentencing the defendants." United States ex rel. Comacho v. Follette, 68 Civ. 1475 (S.D.N.Y.1968).