Filed 1/4/21  P. v. Mackey CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>DEMARIE MACKEY,<br><br>        Defendant and Appellant. | F077022<br><br>(Super. Ct. No. MF012340A)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa and Kenneth Green, Judges.[†]

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Amanda D. Cary and Louis M. Vasquez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Hill, P.J., Detjen, J. and Franson, J.

[†]        Judge Zulfa presided over the in camera hearings on the motion to disclose peace officer personnel records and the motion to disclose the identity of the confidential informant; Judge Green presided over all other hearings pertinent to this appeal.

## INTRODUCTION

In 2018, a jury convicted appellant Demarie Mackey of possession of a weapon while confined in a penal institution (Pen. Code, § 4502, subd. (a)).[1] In a bifurcated proceeding, the jury found true that he had a prior conviction for attempted murder. The trial court sentenced appellant to prison for the midterm of three years, which was doubled because of the prior strike. (§ 667, subd. (e)(1).) This sentence was ordered consecutive to the prison term he was then serving. The court imposed various fines and assessments.

Based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), appellant argues that his due process rights were violated when the trial court imposed some of the financial obligations. We reject that claim. Appellant also requests that we review the in camera proceedings which occurred based on (1) his motion pursuant to *Pitchess*[2] and (2) his request to obtain the identity of a confidential informant (the inmate who alerted authorities that appellant had the weapon in prison). In both instances the court declined to provide any information. We have reviewed the proceedings and we find no error. We affirm the judgment.

## BACKGROUND

In August 2016, appellant was in prison in Kern County serving a life term with the possibility of parole for a 1997 attempted murder conviction. On August 17, 2016, correctional officers received information that one of the inmates in a particular yard may have had a weapon.[3] Prison authorities ordered all of the inmates in that yard to get down. Correctional officers walked onto the yard, and one of the officers saw appellant

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[3] A fellow inmate had alerted authorities that appellant had been armed. The jury, however, was never told about the existence of this confidential informant.

throw away an object before he got down.  That object was recovered.  It was a weapon fashioned with two razor blades, popsicle sticks, tape and string.

Appellant testified in his own defense.  He had no prior prison violations for possessing, manufacturing or being in the proximity of a weapon.  He admitted that he did have violations for fighting with inmates, including a battery.  He had received various violations for not following certain rules and orders.  Regarding the incident in question, however, he denied that he ever had a weapon on him, and he denied throwing anything from his person.

## DISCUSSION

**I.** *Dueñas* **Is Distinguishable and Appellant's Constitutional Rights Were Not Violated; Any Presumed Error Is Harmless.**

At sentencing, the trial court ordered appellant to pay (in part) the following:  (1) a minimum $300 restitution fine (§ 1202.4, subd. (b)(1)); (2) a $40 court operations assessment (§ 1465.8, subd. (a)(1)); and (3) a $30 criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)).[4]  The court did not first determine whether appellant had the ability to pay before these obligations were imposed.

Appellant argues that his due process rights were violated when the trial court imposed these amounts.  He contends that he is indigent,[5] and he requests that we reverse these amounts.  Alternatively, he asserts that these obligations should be stayed pending a

---

[4]  "A restitution fine (§ 1202.4, subd. (b)(1)) represents punishment.  [Citation.]  In contrast, a court operations assessment (§ 1465.8, subd. (a)(1)) and a criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)) are not considered punishment."  (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1048, fn. 3 (*Lowery*).)

[5]  According to the probation report, appellant was born in 1978.  In 1997 he was sentenced to life in prison, plus seven years, stemming from a conviction for attempted murder.  He had been in prison since that time.  The probation report contained no employment record or information regarding appellant's financial status.  Appellant was represented by appointed counsel in this matter.

3.

determination regarding his ability to pay. His arguments are based on *Dueñas*, *supra*, 30 Cal.App.5th 1157.

We reject this claim. *Dueñas* is distinguishable from the present matter, and appellant's constitutional rights were not violated. In any event, any presumed constitutional error is harmless beyond any reasonable doubt.[6]

**A.** ***Dueñas* is distinguishable from the present matter and appellant's constitutional rights were not violated.**

The defendant in *Dueñas* lost her driver's license because she was too poor to pay juvenile citations. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1161.) She continued to offend because aggregating criminal conviction assessments and fines prevented her from recovering her license. (*Ibid.*) The *Dueñas* court described this as "cascading consequences" stemming from "a series of criminal proceedings driven by, and contributing to, [the defendant's] poverty." (*Id.* at pp. 1163–1164.) The *Dueñas* court concluded the defendant faced ongoing unintended punitive consequences because of the imposed financial obligations. *Dueñas* determined those unintended consequences were "fundamentally unfair" for an indigent defendant under principles of due process. (*Id.* at p. 1168.)

The *Dueñas* court concluded that due process requires a trial court to conduct an ability to pay hearing, and ascertain a defendant's present ability to pay, before it imposes certain assessments under section 1465.8 and Government Code section 70373. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) *Dueñas* also held that, although section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and

---

[6] Appellant concedes that he failed to object in the lower court to the imposition of these financial obligations. The parties disagree whether forfeiture occurred. We need not resolve that dispute. Instead, appellant's claim fails on the merits and any presumed error was harmless beyond a reasonable doubt.

concludes that the defendant has the present ability to pay the restitution fine.[7] (*Dueñas*, at p. 1164.)

We decline to expand *Dueñas*'s holding beyond the unique facts found in *Dueñas*. Unlike appellant, the *Dueñas* defendant presented compelling evidence that the imposed assessments resulted in ongoing unintended punitive consequences. No such consequences occurred in this matter, and the unique concerns addressed in *Dueñas* are lacking.[8]

Appellant does not establish the violation of a fundamental liberty interest. His incarceration was not the result of prior criminal assessments and fines. He was not deprived of liberty because of his alleged indigency. He was not caught in a cycle of "cascading consequences" stemming from "a series of criminal proceedings driven by, and contributing to, [his] poverty." (*Dueñas*, *supra*, 30 Cal.App.5th at pp. 1163–1164.) Appellant could have avoided the present conviction regardless of his financial

---

[7]   A different panel of the same court that decided *Dueñas* rejected the argument that *Dueñas* places a burden on the People to prove a defendant's ability to pay in the first instance. (*People v. Castellano* (2019) 33 Cal.App.5th 485, 489–490.) *Castellano* clarifies that the defendant in *Dueñas* had demonstrated her inability to pay in the trial court and, only in that circumstance, had the appellate court concluded fees and assessments could not constitutionally be assessed and restitution must be stayed until the People proved ability to pay. (*Castellano*, at p. 490.) Thus, "a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court." (*Ibid.*)

[8]   The *Dueñas* court determined that those unintended consequences were "fundamentally unfair" for an indigent defendant under principles of due process. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1168.) The *Dueñas* court noted the imposed financial obligations were also potentially unconstitutional under the excessive fines clause of the Eighth Amendment to the United States Constitution. However, *Dueñas* stated, "[t]he due process and excessive fines analyses are sufficiently similar that the California Supreme Court has observed that '[i]t makes no difference whether we examine the issue as an excessive fine or a violation of due process.'" (*Dueñas*, at p. 1171, fn. 8.)

5.

circumstances. *Dueñas* is distinguishable and it has no application in this matter.[9] (See *Lowery*, *supra*, 43 Cal.App.5th at pp. 1054–1055.)

We agree with respondent that a criminal restitution fine, which does not impact a fundamental right, survives rational basis review. A rational basis test is used to evaluate a substantive due process challenge to a law that does not impinge upon fundamental rights. (*Perkey v. Department of Motor Vehicles* (1986) 42 Cal.3d 185, 189.) Under this standard, a law does not violate due process if its enactment is procedurally fair and reasonably related to a proper legislative goal. (*Ibid.*) In this matter, the state has a legitimate goal in punishing criminal behavior. Thus, a restitution fine survives a rational basis test.

Finally, respondent notes that it does not seek to uphold imposition of nonpunitive assessments[10] on those who cannot pay. Respondent takes the position that due process is implicated when nonpunitive assessments are imposed on indigent defendants, but respondent asserts that any violation in this matter was harmless beyond a reasonable doubt. We need not address in depth respondent's comments about the nonpunitive assessments. Instead, a constitutional violation did not occur. The nonpunitive assessments imposed against appellant are not analogous to the imposition of court reporter fees on an indigent defendant. (See *Griffin v. Illinois* (1956) 351 U.S. 12, 18–20 [due process and equal protection require a state to provide criminal defendants with a free transcript for use on appeal].) Appellant was not incarcerated because he was unable to pay prior fees, fines or assessments. (See *Bearden v. Georgia* (1983) 461 U.S. 660, 672–673 [fundamental fairness is violated if a state does not consider alternatives to

---

[9] Respondent urges us to resolve this claim through the excessive fines clause in the Eighth Amendment to the United States Constitution. We need not conduct this analysis because appellant does not raise his claim under the Eighth Amendment.

[10] Nonpunitive assessments include a court operations assessment (§ 1465.8, subd. (a)(1)) and a criminal conviction assessment (Gov. Code, § 70373, subd. (a)(1)). (*Lowery*, *supra*, 43 Cal.App.5th at p. 1048, fn. 3.)

imprisonment if a probationer in good faith cannot pay a fine or restitution].) The imposition of the nonpunitive assessments in this matter did not deny appellant access to the courts, it did not prohibit him from presenting a defense, and it did not prevent him from pursuing these appellate claims. The defendant in *Dueñas* presented compelling evidence that the imposed assessments *had resulted* in ongoing unintended punitive consequences. In contrast, although appellant *might* suffer any number of future unintended consequences, mere speculation does not establish a present constitutional infirmity. (See *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [hypothetical situations are insufficient to establish a statute is facially unconstitutional].)

In short, it was not fundamentally unfair for the trial court to impose the restitution fine and the nonpunitive assessments in this matter without first determining appellant's ability to pay. Therefore, we reject appellant's constitutional challenges and the applicability of *Dueñas* in this matter. (See *Lowery*, *supra*, 43 Cal.App.5th at pp. 1056–1057.)

**B.    Any presumed constitutional error was harmless.**

Even if *Dueñas* is applicable and appellant's constitutional rights were violated, prejudice did not occur. Unlike the *Dueñas* defendant who was placed on probation and subjected to a recurring cycle of debt, appellant was sentenced to a six-year prison term. That sentence was consecutive to the life term he was already serving. Nothing in this record suggests that he might be ineligible for prison work assignments. As such, we can infer he will have the opportunity to earn prison wages. (See *Lowery*, *supra*, 43 Cal.App.5th at p. 1060; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1076; *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837 [ability to pay includes a defendant's prison wages].) Although it may take him time, appellant can make payments from either prison wages or monetary gifts from family and friends. (*Lowery*, at pp. 1060–1061; *Aviles*, at p. 1077.) Thus, any presumed constitutional error is harmless beyond a

reasonable doubt.  (See *Chapman v. California* (1967) 386 U.S. 18, 24.)  Therefore, appellant's constitutional challenges based on *Dueñas* are without merit, and this claim fails.

**II.     The Trial Court Properly Conducted the In Camera *Pitchess* Review.**

Appellant requests that we independently review the in camera *Pitchess* proceeding that the trial court conducted.  Respondent does not object to our review.

**A.     Background.**

Prior to trial, appellant filed a *Pitchess* motion seeking certain information regarding four named correctional officers.  The request sought the following information:  (1) contact information for all persons who had accused the named officers of misconduct; (2) contact information for all persons who were interviewed regarding the aforementioned accusations of misconduct; (3) contact information for all persons who had accused the named officers of making false, misleading or inaccurate statements during any official investigation; (4) contact information for all persons who were interviewed regarding the acts of dishonesty listed in No. 3 above; (5) the dates and locations of all incidents of misconduct mentioned above; (6) all witness statements and other evidence pertaining to the acts of misconduct identified above; and (7) the discipline imposed upon any named officer as a result of any investigation into any of the previously mentioned acts of misconduct.

The trial court granted appellant's motion to conduct an in camera review as to one of the named correctional officers.  The court, however, denied an in camera review for the remaining officers.[11]  On July 12, 2017, the court conducted the in camera review.

A court reporter was present during the closed hearing.  Two custodians of records on behalf of the Department of Corrections and Rehabilitation were sworn and testified.

---

**11**     Respondent notes that appellant does not challenge the trial court's finding that good cause was not shown to examine the other officers' records in camera.

The custodians stated that they had searched for potentially responsive records pertaining to appellant's *Pitchess* motion. The custodians testified that no responsive documents were located. However, the custodians brought to court the personnel file for the correctional officer in question. The court reviewed that file. It declared that no responsive documents existed, and it denied disclosure.

On December 7, 2018, we ordered the superior court to augment our record and provide the oral proceedings of the in camera hearing conducted on July 12, 2017, along with the files which were reviewed and the reporter's transcript.

On March 1, 2019, we received sealed records from the superior court pertaining to this *Pitchess* hearing. Accompanying those documents was the trial court's confidential ruling, which indicated that the judge who had presided over appellant's *Pitchess* hearing had reviewed the court reporter's transcript of the in camera hearing and the materials supplied by the custodians of records. The court marked as exhibit 1 the documents provided by the custodians. The court determined that, although it had no independent recollection of this hearing, the documents in exhibit 1 "appear consistent with the file reviewed" during that hearing. The court had no independent recollection of reviewing any other documents during the *Pitchess* hearing.

A. **The standard of review.**

" 'A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045.' " (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 180.) "A defendant is entitled to discovery of relevant information from the confidential records upon a showing of good cause, which exists 'when the defendant shows both " 'materiality' to the subject matter of the pending litigation and a 'reasonable belief' that the agency has the type of information sought." ' " (*Ibid.*)

9.

When the court finds good cause and conducts an in camera review pursuant to *Pitchess*, it must make a record that will permit future appellate review. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229–1230.) A custodian is not required to present to the trial court any documents that are "clearly irrelevant" to the *Pitchess* motion. (*Id*. at p. 1229.) However, if the custodian has any doubt, those documents should be presented to the trial court. (*Ibid.*) "The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion." (*Ibid.*) A court reporter should memorialize the custodian's statements and any questions asked by the trial court. (*Ibid.*)

## C.    Analysis.

We have reviewed the in camera proceeding. The trial court complied with the procedural requirements of a *Pitchess* hearing. A court reporter was present, and the custodians were sworn prior to testifying. (*People v. Yearwood*, *supra*, 213 Cal.App.4th at p. 180.)

We have reviewed the sealed personnel file. Nothing in these records was subject to disclosure under *Pitchess*. None of the materials were responsive to the information which appellant sought. Based on this record, the superior court properly conducted the *Pitchess* hearing. No documents were discoverable. Accordingly, no error occurred when the court denied any disclosure.

## III.    The Trial Court Properly Denied Disclosure of the Identity of the Confidential Informant.

Prior to trial, appellant moved for the disclosure of the identity of a confidential informant, an inmate who had alerted prison authorities that appellant had a weapon on the day of his offense. After conducting an in camera hearing with the informant and other witnesses, the trial court denied disclosure. That transcript was sealed.

10.

Appellant requests that we review the sealed transcript of the in camera proceeding to determine if the trial court erred in failing to disclose the identity of the confidential informant. Respondent does not oppose this request.

The prosecution is required to disclose the name of an informant who is a material witness in a criminal case. (*People v. Lawley* (2002) 27 Cal.4th 102, 159.) "An informant is a material witness if there appears, from the evidence presented, a reasonable possibility that he or she could give evidence on the issue of guilt that might exonerate the defendant." (*Ibid*.) The defendant bears the burden of presenting some evidence on this issue. (*Ibid*.)

We have reviewed the sealed reporter's transcript. The trial court correctly applied the standard in determining whether or not disclosure was required. The record does not demonstrate that a reasonable possibility existed that the confidential informant could have given evidence on the issue of guilt that might have exonerated appellant. As such, the court properly denied disclosure of the identity of the confidential informant. Consequently, error did not occur. (See *People v. Lawley*, *supra*, 27 Cal.4th at p. 160.)

## DISPOSITION

The judgment is affirmed.