Filed 7/11/22  P. v. McGinnis CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br>MARCUS GEROY McGINNIS,<br><br>    Defendant and Appellant. | A157603, A159573<br><br>(Napa County<br>Super. Ct. No. 18CR003734) |

In these consolidated appeals, defendant and appellant Marcus Geroy McGinnis argues the trial court violated his constitutional rights under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) when it imposed a $300 restitution fine (Pen. Code,[1] § 1202.4, subd. (b)), a $40 court security fee (§ 1465.8), and a $30 criminal conviction assessment fee (Gov. Code, § 70373), without making a finding on his ability to pay. The People contend: 1) defendant's appeal is moot because the trial court already determined his ability to pay at the sentencing hearing; and 2) defendant forfeited his claim by failing to object to the fines and fees imposed at the sentencing hearing. On the merits, the People contend the restitution fine imposed was constitutional under both the Eighth Amendment and due process principles, and any error was harmless. We affirm.

---

[1] All further undesignated statutory references are to the Penal Code.

# BACKGROUND[2]

## *The Underlying Offense*

On November 18, 2018, defendant walked into a Target store, filled a shopping basket with items, and walked out. A security guard observed defendant leave the store without paying for the items. The security guard stopped defendant outside of the store, brought him back inside, and called the police. After determining defendant was on two separate grants of probation, the responding officers arrested defendant.

The Napa County District Attorney filed an information charging defendant with petty theft with priors (§ 666, subd. (b)). The information also alleged four prior theft convictions, a prior strike conviction (§ 667, subds. (b)–(i)), and a prison prior (§ 667.5, subd. (b)).

On March 13, 2019, defendant pleaded no contest to one count of petty theft with a prior (§ 666, subd. (b)) and admitted the four prior theft convictions and the prior strike conviction. The trial court struck the prison prior.

## *Sentencing and First Appeal (Case No. A157603)*

Defense counsel submitted a sentencing memorandum, noting defendant had obtained his GED in 2007. Defendant had completed several courses through Coastline Community College, which included five business classes, and classes in astronomy, history, and health. Defense counsel also submitted a statement of assets on defendant's behalf, in which defendant said he was transient and unemployed. He listed food stamps and his "mom" as his only sources of income. He had no assets. Defendant listed "student loans" and "fines and restitution" as debts. Attached to the sentencing

---

[2] Because defendant pled guilty, the factual background is taken from the probation department's felony presentence report.

memorandum were letters from defendant's family seeking leniency and advising the court of the strong familial support defendant has in Lake County. Defendant's sister wrote that "when clean headed," defendant is a "hardworking and loving man." Defendant's sister also thought that with the appropriate drug treatment program, defendant could "succeed and move on to become a productive and contributing member of society."

The presentence report filed by the probation department noted defendant's numerous prior convictions, which included a 2003 conviction for unlawful intercourse with a minor. (§ 261.5, subd. (d).) Defendant reported that he had been previously employed with "My Eye For Detail, Taco Bell, Oventi Bar and Bakery and the Napa Valley Wine Train." Defendant had no known medical condition, other than Hepatitis C. Defendant reported that he suffers from "bipolar, anxiety and post traumatic stress disorder." The probation department recommended that probation be denied and that defendant be ordered to pay a $40 court security fee (§ 1465.8), a $182 jail booking fee (set by Napa County); a $300 criminal conviction assessment fee (Gov. Code, § 70373), a $560 presentence report fee (§ 1203.1b), a $300 restitution fine (§ 1202.4), and a suspended $300 parole revocation fine.

On May 29, 2019, the trial court sentenced defendant to 32 months in state prison. The court awarded defendant 158 days credit for actual time served and 158 days for conduct credit, for a total of 316 days of presentence custody credits. The court imposed the mandatory $40 court security fee (§ 1465.8); the $30 criminal conviction assessment fee (Gov. Code, § 70373); the minimum $300 restitution fine (§ 1202.4); and suspended the parole revocation restitution fine (§ 1202.45). The court waived all other fees, assessments, including $600 in attorney fees.

On June 20, 2019, defendant filed a timely notice of appeal (case No. A157603), challenging the imposition of the fines and fees.

***Motion to Vacate and Second Appeal* (Case No. A159573)**

On September 17, 2019, defense counsel filed a "Motion to Vacate Court Operations Assessments and Conviction Assessments and to Stay Execution of Restitution Fines pursuant to [*Dueñas*]." In opposition, the prosecutor argued the *Dueñas* holding was not settled law, the extreme circumstances in that case were distinguishable from defendant's case, defendant forfeited his claim by not objecting to the amounts imposed at sentencing, defendant's fines and fees were not "excessive" under an Eighth Amendment analysis, and the court already analyzed defendant's ability to pay by reviewing his statement of assets at the sentencing hearing.

At the initial hearing held on November 7, 2019, the following colloquy occurred:

"[DISTRICT ATTORNEY]: I ordered the transcript of the sentencing hearing, and I received it just this week on Tuesday, but there is a discrepancy between what was delivered to me and what the Minute Order says. The Minute Order indicates that there was a financial hearing done by the Court and that wasn't part of the transcript that was provided. . . .

"THE COURT: Well, there was a financial hearing in the sense that [deputy public defender] Ms. Hendry provided and the defendant provided me with a statement of assets, and *I considered the statement of assets in making the determination to waive certain fines and fees.* [¶] And I think what we're talking about right now are essentially what has always been, statutorily at least, mandatory minimum fines and fees, that being the [$]40 and [$]30 and the [$300] restitution fine. *So from my perspective, I conducted a financial*

4

*hearing because I waived – I waived attorney fees; I waived some of the other fees as well.*" (Italics added.)

As to defendant's physical condition, the court stated: "My recollection is that there is *nothing about his physical condition that would prevent him from working in prison*. I waived the vast majority of the fines and fees we're talking about." (Italics added.)

After hearing from defense counsel and the prosecutor, the court continued the matter to December 10, 2019.

At the continued hearing on December 10, 2019, the trial court opened with the following: "This is a motion to vacate the court operations assessments. [¶] Maybe I think that we probably should sort of back up and make sure the record is clear. As you both know the sentencing was on May 29th. And in that matter there was a *Romero* motion. Ultimately there was a state prison commitment that this court issued. And I'll note that the Statement of Assets is part of the court file, and *it's my custom and habit as it was in this particular case, to consider that Statement of Assets as part of my decision about whether or not to waive any fines or fees.* And the fact that the Statement of Assets is in the file I know I reviewed it. And I -- actually I also know that Miss Hendry always submits Statements of Assets for her clients when they're being sentenced. Not every defense lawyer does, but I know she does very regularly. [¶] I can also see that I waived the Booking fee, the Pre-sentence report fee, the attorney's fees. The only fees I imposed were the $70 which was the $40 Court Security Fee, $30 Conviction Assessment, along with the $300 restitution fine. Then, of course, I ordered restitution in an amount to be determined. And I imposed those fees as I have. [¶] And I always -- I always felt directed by the statutes that said these were not waivable. And subsequently we've had a number of cases from the Court of

5

Appeals. The one that's most well-known is the *Duenas* case which decided that basically there was due process violation by not considering a defendant's ability to pay. At least in that case as the People point out in their brief *Duenas* is a pretty unusual set of facts involving a defendant who had definite physical health issues, was unemployed, and was not really employable. . . . [¶] . . . [¶] So we are on now for, I just want to lay that sort of ground work because really what we're talking about is a motion now by the defense to go a step further and waive both the $70 fine and the $300 restitution fine." (Italics added.)

Defense counsel argued that although some courts have disapproved of, or disagreed with the *Dueñas* case, the trial court should vacate the fees and stay the fine because defendant "presented an extreme set of facts" like *Dueñas* did. Defense counsel explained that defendant has a long history of indigency, homelessness, and drug addiction. Also, since being sentenced, defendant had developed some significant health issues due to an infection in his jaw that required surgery. When the trial court asked defense counsel if she had medical documentation, counsel said she would subpoena the records. The trial court stated that if defendant's medical issues were as she described, then "that may get us closer to the *Duenas* situation." (Italics added.)

The trial court continued the matter to January 3, 2020, in order to give defense counsel the opportunity to obtain defendant's medical documentation. At the January 3 hearing, defense counsel emphasized that since defendant's sentencing, defendant had received intensive medical treatment stemming from complications he had with a tooth extraction. Defense counsel stated that she had obtained the medical records which showed that defendant had had a tooth extraction while in prison and a

subsequent tooth infection required him to undergo jaw surgery. Defense counsel stated that she had been unable to obtain the medical records from the most recent facility in Stockton because that facility indicated that it did not have any records for defendant.

The prosecutor asked the court to affirm its prior imposition of fines and fees since defendant's medical issues had arisen post-sentencing. Defense counsel responded that although defendant did not have the medical issues at the time of sentencing, there was evidence at that time to show that defendant would not have the ability to find work due to the section 290 sex offender registration requirement and his 20-year addiction to drugs and alcohol.

The trial court denied the motion, explaining: "In *Duenas*, the defendant was suffering from cerebral palsy and had medical issues that persuaded the Appellate Court to basically apply [a] due process analysis to the remaining fines and fees, which by way at least statutorily, those fees, the $40 Court Security fee, $130 Criminal Conviction Assessment, and $300 Restitution Fine are not waivable statutorily. And there are cases that disagree with *Duenas* . . . appl[ying] the due process analysis to those particular fines and fees." (Italics added.)

On February 14, 2020, defendant filed a second appeal (case No. A159573), challenging the denial of his *Dueñas* motion. The appeals in case Nos. A157603 and A159573 were subsequently consolidated for purposes of briefing, oral argument, and decision.

## DISCUSSION

Defendant contends the court operations and conviction assessments should be vacated, and the execution of the restitution fine stayed, unless and until the prosecution proves that defendant has the ability to pay. The People

argue defendant's claim is moot since the trial court considered his ability to pay when it considered his statement of assets at the time of sentencing. The People alternately assert that defendant has forfeited this claim because sentencing in this case took place five months after *Dueñas* was decided, but he lodged no objection to the fines and fees imposed. On the merits, the People argue the restitution fine should be analyzed under the excessive fines clause of the Eighth Amendment and contend the amount was not constitutionally excessive. And, even if analyzed under a due process analysis, the restitution fine was constitutionally imposed. Finally, the People contend any error in imposing the criminal conviction assessment and court security fee is harmless beyond a reasonable doubt.

1.    *Dueñas*

In *Dueñas,* the court, relying on the principle that "a state may not inflict punishment on indigent convicted criminal defendants solely on the basis of their poverty," held "due process of law requires [a] trial court to . . . ascertain a defendant's present ability to pay before it imposes" fines and assessments. (*Duenas, supra,* 30 Cal.App.5th at pp. 1166, 1164.) The facts presented in *Dueñas* were unusually compelling. Defendant, an unemployed, homeless woman with cerebral palsy, supported her two children while living on public aid. (*Id*. at pp. 1160–1161.) She lost her driver's license because she could not afford to pay her juvenile citations, then acquired three misdemeanor convictions for driving without a license because the accumulating criminal assessments and fines prevented her from recovering her license. (*Id*. at p. 1161.) "Key to the [*Dueñas*] holding was its concern for 'the cascading consequences of imposing fines and assessments that a defendant cannot pay,' which '[t]he record in this matter [*Dueñas*]

8

illustrates.' " (*People v. Caceres* (2019) 39 Cal.App.5th 917, 924 (*Caceres*), citing *Dueñas*, *supra,* 30 Cal.App.5th at p. 1163.)

## 2.     *Defendant Did Not Forfeit His Dueñas Claim*

Under ordinary rules of appellate procedure, the failure to object to the imposition of fees in the trial court forfeits the issue on appeal. (See *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1054 [noting the "traditional rule that a party must raise an issue in the trial court if they would like appellate review"]; see also *People v. Aguilar* (2015) 60 Cal.4th 862, 864 ["the appellate forfeiture rule applies to challenges to fees imposed at sentencing"].) After *Dueñas* was issued in January 2019, appellate courts have reiterated the requirement that a defendant must challenge the imposition of fines and fees in the trial court on grounds of inability to pay in order to preserve the issue on appeal. (See *People v. Cowan (*2020) 47 Cal.App.5th 32, 50, review granted June 17, 2020, S261952 ["*upon proper objection*, the court must hold a hearing at which defendant will have an opportunity to bear his burden of proof on the issue of ability to pay" (italics added)]; *People v. Kopp* (2019) 38 Cal.App.5th 47, 95, review granted Nov. 13, 2019, S257844 [agreeing with *Dueñas* to the extent it holds that "due process 'requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments . . .' *if the defendant requests such a hearing*" (italics added)]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154 ["Given that the defendant is in the best position to know whether he has the ability to pay, it is incumbent on him to object to the fine and demonstrate why it should not be imposed."].)

Sentencing in this case took place in May 2019, five months after *Dueñas* was decided. Given that *Dueñas* was already on the books by the time defendant was sentenced, the ordinary waiver rules apply to his first appeal

in case No. A157603. (See, e.g., *People v. Aguilar, supra,* 60 Cal.4th at p. 864 [failure to object to trial court fees precludes the defendant's appellate challenge]; *People v. Trujillo* (2015) 60 Cal.4th 850, 858–860 [failure to object to fees because of defendant's inability to pay forfeits the challenge]; *People v. McCullough* (2013) 56 Cal.4th 589, 590–591 [failure to object to sufficiency of evidence supporting a booking fee forfeits the issue on appeal]; *People v. Nelson* (2011) 51 Cal.4th 198, 227 [failure to object to $10,000 restitution fine on inability to pay grounds forfeits the challenge]; *People v. Avila* (2009) 46 Cal.4th 680, 729 [failure to assert that court must consider an inability to pay when imposing more than the statutory minimum and failure to adduce evidence of an inability to pay forfeits the challenge].)

However, as noted, after filing his notice of appeal in case No. A157603, defendant filed his *Dueñas* motion pursuant to section 1237.2[3] in the trial court, which the court considered and denied. Defendant contends, and the People do not appear to claim otherwise, that the trial court had jurisdiction pursuant to section 1237.2 to hear the motion notwithstanding the pending appeal. Thus, having raised his claim in the trial court, we conclude defendant has preserved his *Dueñas* claim for appellate review.

---

[3] Section 1237.2 provides: "An appeal may not be taken by the defendant from a judgment of conviction on the ground of an error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction in the trial court, which may be made informally in writing. The trial court retains jurisdiction after a notice of appeal has been filed to correct any error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs upon the defendant's request for correction. This section only applies in cases where the erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs are the sole issue on appeal."

**3.** ***The Court Did Not Violate Defendant's Constitutional Rights***

Constitutional challenges after *Dueñas* were considered by this Division, opting to address constitutional challenges to fines and fees based on assertions of inability to pay under the Eighth Amendment and article I, section 17 of the California Constitution. (*People v. Cowan, supra,* 47 Cal.App.5th at p. 42; see *Caceres, supra,* 39 Cal.App.5th at pp. 923, 926 [*Dueñas* due process analysis did "not justify extending its holding beyond those facts"]; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1060 (*Aviles*) [*Dueñas* wrongly decided; constitutional challenge to imposition of fines, fees, and assessments should be based on excessive fines clause of Eighth Amendment]; *People v. Hicks* (2019) 40 Cal.App.5th 320, 325–329 (*Hicks*), review granted Nov. 26, 2019, S258946 [*Dueñas* wrong to conclude due process considerations may bar assessments, fines, and fees; such costs and fines do not deny criminal defendants access to courts]; *People v. Kopp, supra,* 38 Cal.App.5th at pp. 95–97 [rejecting *Dueñas* analysis with respect to restitution fines, which should be analyzed under excessive fines clause, but following *Dueñas* as to court fees and assessments].) ) However, as we explain, on this record, whether analyzed as a due process issue or an excessive fine issue, defendant's claim fails on the merits.[4]

A.  *Due Process*

Relying on *Dueñas*, defendant argues the trial court violated his due process rights when it imposed fines and fees without an ability to pay hearing. We are not persuaded.

Defendant was not denied access to the courts or prohibited from presenting a defense. (See *Griffin v. Illinois* (1956) 351 U.S. 12, 18–20 [due

---

[4] Similarly, we need not and do not address the People's contention that defendant's appeal is moot.

process and equal protection require a state to provide criminal defendants with a free transcript for use on appeal]; *People v. Kingston* (2019) 41 Cal.App.5th 272, 281; *Hicks, supra*, 40 Cal.App.5th at p. 326.) Defendant was not incarcerated because he was unable to pay prior fees, fines or assessments. (See *Bearden v. Georgia* (1983) 461 U.S. 660, 672–673 [fundamental fairness is violated if a state does not consider alternatives to imprisonment if a probationer in good faith cannot pay a fine or restitution]; *Kingston,* at pp. 281; *Hicks,* at p. 326.)

More importantly, the record reflects the trial court *did* consider defendant's ability to pay at the time of sentencing and again by way of the section 1237.2 motion, which the court considered and denied. Prior to imposing the challenged fines and fees, the trial court had reviewed defendant's sentencing memorandum and statement of assets, which provided information regarding defendant's work history, education, living situation, as well as his debts and lack of financial resources beyond public assistance for food and help from his mother. The trial court also had reviewed the probation department's presentencing report, which recommended that defendant be ordered to pay a $40 court security fee (§ 1465.8), a $182 jail booking fee (set by Napa County); a $30 criminal conviction assessment fee (Gov. Code, § 70373), a $560 presentence report fee (§ 1203.1b), a $300 restitution fine (§ 1202.4), and a suspended $300 parole revocation fine. The trial court, however, waived the booking and presentence report fees, as well as attorney fees in the amount of $600. Accordingly, by waiving various fines and fees, the trial court impliedly considered defendant's ability to pay prior to imposing the disputed fines and fees.

Although the trial court's unilateral consideration of defendant's inability to pay fines and fees at sentencing does not perfectly substitute for

12

an actual hearing, the trial court subsequently considered the issue at no less than three hearings. At the initial hearing held on November 7, 2019, the court expressly stated it had considered defendant's "statement of assets in making the determination to waive certain fines and fees." As to defendant's physical condition, the court stated: "My recollection is that there is nothing about his physical condition that would prevent him from working in prison. I waived the vast majority of the fines and fees we're talking about."

At the next hearing held on December 10, 2019, the court reiterated that it had reviewed the statement of assets, noting that it was the court's "custom and habit . . . to consider that Statement of Assets as part of [its] decision about whether or not to waive any fines or fees." After defense counsel advised the court that defendant had developed some significant health issues due to an infection in his jaw that required surgery, the court continued the matter to allow defense counsel the opportunity to obtain defendant's medical records.

At the continued hearing on January 3, 2020, defense counsel advised the court she had received medical records documenting defendant's tooth extraction and resulting complications that required surgery. Defense counsel, however, did not have any records regarding defendant's subsequent treatment because the hospital she had subpoenaed indicated it did not have any records for defendant. Counsel represented that defendant "continues to have medical issues that require intensive treatment," but the most recent facility in Stockton had not responded to her subpoena. Counsel added that that "if the court wants that information, then I am going to have to ask for a continuance, maybe one more week, to follow up with them . . . ." Counsel further represented that although defendant was not suffering from these medical issues at the time of sentencing, other factors were present that the

13

court could rely on to determine defendant "won't have the ability to find work, and [he] should not be required to pay those fines and fees." Those factors included defendant's "290 registration, and his 20-year addiction to drugs and alcohol."

In denying the motion, the trial court explained that it found defendant's case presented a "distinguishable situation when compared to *Duenas*." (Italics added.) The court addressed the varying approaches to the fines and fees there at issue. The court noted that it was not prepared to change the May 29 order under which the fines and fees would remain in effect. Although the trial court failed to explain whether its order was made pursuant to an ability to pay analysis, or otherwise, what is clear is that defendant was given the opportunity to appear and present evidence regarding his inability to pay, which the court considered and ultimately rejected.

B. *Excessive Fines Clause*

Defendant asserts that imposition of the fees, fines and assessments imposed against him violated the excessive fines clause of the Eighth Amendment.

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish." (*U.S. v. Bajakajian* (1998) 524 U.S. 321, 334 (*Bajakajian*).) "The California Supreme Court has summarized the factors in *Bajakajian* to determine if a fine is excessive in violation of the Eighth Amendment: '(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay.' " (*Aviles, supra*, 39 Cal.App.5th at p. 1070.) While ability to

14

pay may be part of the proportionality analysis, it is not the only factor. (*Bajakajian,* at pp. 337–338.)

According to *Bajakajian*, two considerations are particularly relevant in deriving a constitutional excessiveness standard. First, "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." (*Bajakajian, supra*, 524 U.S. at p. 336.) Second, "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise. Both of these principles counsel against requiring strict proportionality between the amount of a punitive forfeiture and the gravity of a criminal offense, and we therefore adopt the standard of gross disproportionality articulated in our Cruel and Unusual Punishments Clause precedents." (*Ibid.*)

In the instant case, defendant filled up a shopping basket and then brazenly walked out of the store without paying for the items. Although the loss to the store was de minimis ($192.79), it does not change the nature of the underlying theft. Defendant's charges, allegations and plea agreement reflected not only his underlying conduct, but also the seriousness of his criminal history. Under the terms of the plea agreement, the court imposed the low term, plus his strike prior; the court subsequently waived the bulk of the fines, fees, and attorney fees. The fines and fees imposed in this case, which amount to $370, are not grossly disproportionate to defendant's culpability. (*Aviles, supra,* 39 Cal.App.5th at p. 1070.)

## 4. *Any Constitutional Violation Was Harmless*

Finally, on the facts of this case, any potential error was harmless beyond a reasonable doubt. (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1035.)

15

Defendant claims that he is "manifestly unable" to pay the fees and restitution fine because he "lacks any significant job history; has no assets; has debts; has a lengthy history of incarceration, drug addiction, and homelessness; and is a registered sex offender." Additionally, he asserts the "severity of his physical condition"—an "infection resulting the removal of some of his jawbone; six weeks of intravenous antibiotics to treat the remaining infection; and additional surgery to remove more jawbone and replace it with a metal plate"—further limits his ability to pay the fines and fees imposed. Defendant, however, fails to establish how this "condition" hinders his ability to work either in prison or upon release.

" 'Ability to pay does not necessarily require existing employment or cash on hand.' [Citation.] '[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's present ability but may consider a defendant's ability to pay in the future.' [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody." (*People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1837; see *People v. Staley* (1992) 10 Cal.App.4th 782, 783 [when the trial court considers ability to pay fines or fees, its determination may be made based on the person's ability to earn where he or she has no physical, mental or emotional impediment which precludes the person from finding and maintaining employment once his or her sentence is completed].)

Defendant was 40 years old at the time of sentencing and had no known dependents. Although he may not have had a "significant" employment record, he has held several jobs in the past and has a high school equivalency diploma. He has taken numerous college classes, including five business classes. The record does show that prior to his arrest, defendant was

homeless and received a food allowance benefit. He also has a lengthy history of drug addiction. However, he has a strong family support system. Defendant's sister described him as "hardworking" when "clean headed." She believed that, with an appropriate drug treatment program, defendant could "become a productive and contributing member of society."

Thus, unlike in *Dueñas*, there is evidence from which it can be inferred that defendant has the capacity to pay the minimal fine and fees imposed by the court. (See *Aviles*, *supra*, 39 Cal.App.5th at p. 1076 [court "can infer defendant . . . has the ability to pay the fines and fees imposed upon him from probable future wages"]; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140 [any *Dueñas* error was harmless given long prison term and no evidence of inability to work].)

Accordingly, the record indicates the total amount of the restitution and other fines and assessments will not constitute a financial burden or hardship anything like the debt imposed in *Dueñas*. In short, any error was harmless.

### DISPOSITION

The judgment is affirmed.

NADLER, J.*

WE CONCUR:

POLLAK, P. J.
BROWN, J.

*People v. McGinnis* (A159573)

---

* Judge of the Superior Court of California, County of Sonoma, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.